DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Lucas County Court of Common Pleas. There, appellant was convicted and sentenced on two counts of aggravated murder following the return of a jury verdict. Because we conclude that there was sufficient evidence to support these convictions and appellant was afforded his due process rights, we affirm.
Appellant is Terrance Davis. On May 31, 1999, at approximately 7:45 p.m., appellant's girlfriend, Shawandra "Niecy" Burchfield, arrived at appellant's mother's home in Toledo. Burchfield parked a short distance behind a car she recognized as belonging to Sonya Hayes, appellant's former girlfriend and the mother of one of his children. Hayes was waiting in her car, and Burchfield decided to stay in her car until Hayes left.
While Burchfield waited, she observed a masked male figure dressed in dark "Carhart" type overalls and a hooded sweatshirt cross the street. The man approached Hayes's car, then fired multiple gun shots into the car and ran away.
Sonya Hayes, who was in the late stages of pregnancy, was shot six times in the torso. She survived long enough to tell police that she could not identify her assailant. Her unborn child was also killed.
Appellant's mother also witnessed the shooting, but neither she nor Niecy Burchfield could identify the killer. While police were still in the preliminary stages of the investigation, appellant called Burchfield at 8:43 p.m. In a 44-minute conversation, appellant told Burchfield that he was at a friend's house at the time of the shooting. He allegedly arrived there at 7:45 p.m. Appellant repeated this account to police when later interviewed.
Appellant's alibi, however, did not comport with the evidence. Piecing together telephone records, police discovered that appellant had called his friend's house at 8:14 p.m. from a filling station and, according to a witness at the friend's house, did not arrive there until 15 minutes after this call. This made appellant's whereabouts unaccounted for at the time of the shooting.
Moreover, police discovered that appellant, recently unemployed and responsible for $900 per month child support, had argued with Sonya Hayes about keeping the baby. At one point Hayes told appellant that she would not have an abortion and, "* * * you think you don't have money now, wait till I have this baby." Complicating this was appellant's relationship with Niecy Burchfield, to whom appellant denied being the father of Hayes's baby. An admission of paternity would have meant that appellant and the victim had sexual relations at the same time appellant was with Burchfield, a condition Burchfield found unacceptable. Burchfield told appellant that if Hayes's baby was his, Burchfield would leave him.
Appellant's disingenuous alibi, together with prior threats to the victim and her baby and the fact that only appellant, his mother, and the victim knew where Sonya Hayes would be when she was shot led the state to charge appellant with the capital murder of Sonya Hayes and her unborn baby. Additionally, appellant was charged with the unlawful termination of another's pregnancy, all with gun specifications.
The matter proceeded to a jury trial, following which appellant was convicted on all counts. The jury was, however, unable to reach a verdict on the firearm specifications. After the penalty phase of the trial, the jury recommended that appellant be sentenced to life imprisonment without the possibility of parole. The trial court ordered appellant to serve two life terms without parole. The terms were to be served consecutively.
From this judgment of conviction and sentence, appellant now brings this appeal, setting forth the following six assignments of error:
"NUMBER ONE
 The inconsistent verdicts violated Mr. Davis' rights to due process and to be free from cruel and unusual punishment as protected by the constitutions of the United States and of the State of Ohio.
"NUMBER TWO
 The trial court erred to the prejudice of Mr. Davis by refusing his request for a brief two week continuance to perform DNA tests on a mask that was found during the trial in violation of his due process rights under the Unites States and Ohio Constitutions.
"NUMBER THREE
 The trial court erred to the prejudice of Mr. Davis by instructing the jury on the issue of foreseeability which resulted in lessening the State's burden of proof and violating his right to due process under the United states and Ohio Constitutions.
"NUMBER FOUR
 The trial court erred to the prejudice of Mr. Davis by denying him the right of allocation at sentencing in violation of Crim.R. 32(a) and Ohio Supreme Court precedent.
"NUMBER FIVE
 Insofar as any of the errors complained of herein are deemed not to have been preserved properly by trial counsel, appellant was denied the effective assistance of counsel to which he is constitutionally entitled.
"NUMBER SIX
 The trial court erred to the prejudice of Mr. Davis by denying the motion for acquittal presented by the defense at the conclusion of the presentation of evidence."
 I.
In his first assignment of error, appellant complains that the jury's failure to convict him of firearm specifications, while convicting him of killings performed with a firearm, constitutes an inconsistent verdict. Such a verdict, appellant insists, is a violation of his constitutional rights to due process and to be free from cruel and unusual punishment.
Appellant concedes that there is a substantial body of Ohio jurisprudence which holds that when a principle charge in an indictment is not dependent on an attached specification, a conviction on the principle charge, coupled with an acquittal on the specifications, does not invalidate the principle conviction. See State v. Perryman (1976),49 Ohio St.2d 14, paragraph three of the syllabus; State v. Lovejoy
(1997), 79 Ohio St.3d 440, at paragraph one of the syllabus; State v.Boyd (1996), 110 Ohio App.3d 13, 16-17. However, appellant insists that these holdings are no longer valid in view of the opinion of the United States Supreme Court in Penry v. Johnson (2001), 532 U.S. 782.
We disagree with the significance appellant attaches to Penry. In that case, a Texas jury convicted John Paul Penry of a 1979 rape and capital murder. In the penalty phase, the jury was asked to answer three questions: (1) whether the death was deliberate, (2) whether the defendant was likely to pose a continuing threat to society, and, (3) (if applicable) whether the killing was an unreasonable response to provocation. A "yes" answer to all of the "special issues" dictated the death penalty.
Penry presented extensive evidence in mitigation that he had been an abused child and was mentally retarded. This evidence had little relevance to any of the "special issues," but nonetheless defense counsel argued that if the jury felt that, because of the mitigating evidence, Penry should not be put to death, then they should vote "no" on one of the issues. The jury answered in the affirmative to all of the "special issues." Penry was sentenced to death.
The United States Supreme Court vacated Penry's sentence, holding that the "special issue" questions might cause a reasonable juror to believe that there was no vehicle to express a view that the mitigating evidence foreclosed the death penalty. Penry v. Lynaugh (1989), 492 U.S. 302. On remand, Penry was again tried and convicted. Again, during the sentencing phase, the same three questions were submitted to the jury, but this time the trial court added an instruction that the jury should consider mitigating circumstances. The court instructed the jurors that if they found sufficient mitigation, then a "negative finding" should be entered on one of the "special issues."
Again, the jury answered all three questions in the positive. Again, Penry was sentenced to death and again the United States Supreme Court reversed Penry's sentence, concluding that an instruction which directs a jury to, in effect, make a dishonest finding, did not comply with the mandates of the first appeal. Penry at 802.
We frankly fail to see how anything in Penry affects Ohio precedents concerning inconsistent verdicts between counts or between counts and specifications. Accordingly, appellant's first assignment of error is not well-taken.
 II.
Appellant, in his second assignment of error, contends that the trial court erred to his prejudice by refusing to grant a trial continuance. Defense counsel sought to have DNA tests performed on a Halloween mask discovered just prior to the trial in the vicinity of the shooting.
A decision as to whether to grant or deny a continuance is within the sound discretion of the trial court and will not form a basis for reversal absent an abuse of that discretion. State v. Unger (1981),67 Ohio St.2d 65, syllabus. An abuse of discretion is more than an error of law or of judgment, the term connotes that the courts attitude is arbitrary, unreasonable or unconscionable. State v. Long (1978),53 Ohio St.2d 91, 98.
As the state points out, there was nothing which would link this later discovered mask to the one worn by Sonya Hayes's assailant. The mask at issue was discovered substantially after the shooting and some distance from the crime scene. Since any connection with the mask and the case is at most speculative, we cannot say that the court abused its discretion in denying a continuance to perform tests on this object. Accordingly, appellant's second assignment of error is not well-taken.
 III.
In his third assignment of error, appellant objects to the inclusion of certain language in the trial court's jury charge concerning causation. The court told the jury:
 "* * * Cause is an act which in a natural and continuance sequence directly produces the death and without which it would not have occurred.
 "The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act. The defendant is also responsible for the natural and foreseeable consequences that follow in the ordinary course of events from the act.
 "The test for foreseeability is not whether the defendant should have foreseen the injury in its precise form. The test is whether a reasonably prudent person in light of all the circumstances would have anticipate that death was likely to result from the performance of the unlawful act."
Appellant points out that this instruction is materially the same as that criticized by the Ohio Supreme Court in State v. Burchfield (1993),66 Ohio St.3d 261 and State v. Getsy (1998), 84 Ohio St.3d 180.
Notwithstanding the Supreme Court's cautionary language concerning the use of this instruction in a murder case, the instruction is not prejudicial to this appeal for the same reasons articulated in Burchfield
and Getsy cases. Jury instruction must be viewed in the context of the overall charge, not in isolation. Getsy at 196, citing State v. Thompson
(1987), 33 Ohio St.3d 1, 12-13, and State v. Price (1979),60 Ohio St.2d 136, paragraph four of the syllabus. As in Burchfield andGetsy, here the whole charge made clear that to convict for aggravated murder there must be proof beyond a reasonable doubt that appellant possessed a specific intent to kill. Id., Burchfield at 262-263. Accordingly, appellant's third assignment of error is not well-taken.
 IV.
In his fourth assignment of error, appellant insists that at sentencing, he was denied the right of allocution as provided for in Crim.R. 32(A).
Crim.R. 32(A) provides in material part:
 "(A) Imposition of sentence. * * * At the time of imposing sentence, the court shall do all of the following:
 "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."
At sentencing in this matter, the following exchange occurred:
 "THE COURT: At this time, Mr. Konop [defense counsel], Mr. Davis [appellant], Mr. Gamso [defense counsel], the Court will receive any statements that counsel or Mr. Davis wish to make in Mr. Davis' behalf, and may present — and they may present any information in mitigation of punishment, all provided for in Criminal Rule 32(A)(1).
"MR. KONOP: We have no statement to make.
 "THE COURT: At this time, the State [sic] will hear from the prosecutor's office. Mr. Herr?
Inquiries directed to both defense counsel and the defendant have generally been held to be in compliance with the rule. See e.g. Statev. Davis (1983), 13 Ohio App.3d 265, 268-269 ("Does the defense or the defendant wish to address the Court prior to the disposition of this matter?"); State v. Moore (Oct. 30, 1998), Greene App. No. 97CA137 ("Mr. Moore, is there something you would like to say in mitigation, or Mr. Smiley [defense counsel], anything on Mr. Moore's behalf?") However, appellant challenges the validity of such precedents in view of State v.Green (2000), 90 Ohio St.3d 352.
Green was found guilty of aggravated murder and several lesser offenses by a three-judge panel. Late in the evening, following the penalty phase hearing and several hours of deliberation, the panel announced it was ready to proceed and asked if the defendant objected to sentencing on both the non-capital and capital offenses at the same time. Hearing no objection, the court proceeded as follows:
 "The Court: Is there anything with regard to those offenses, Counsel or Mr. Green, prior to the Court passing sentence on both those counts as well as on Counts 7, 8 and 10?
"Mr. Cameron [defense counsel]:
Anything we wish to say?
"The Court: Yes."
Defense counsel made brief remarks concerning a firearm specification, then said nothing further. Green did not speak. The court then proceeded to hear victim impact statements and imposed sentence on all charges, including a death sentence in the aggravated murder.
The Ohio Supreme Court found this exchange wanting under Crim.R. 32(A). The court held that the trial court had erred, "* * * in not explicitly asking Green, in an inquiry directed only to him, whether he had anything to say." Id. at 359. Finding this error neither invited nor harmless, the court vacated Green's sentence and ordered him resentenced.
The state attempts to distinguish Green, arguing that the present matter does not contain the ambiguities present in Green, as there were no multiple lesser charges for which comment was sought. Although theGreen court discussed these ambiguities, a fair reading of the case does not lead us to believe that the issue of ambiguity among counts was dispositive in the court's thinking. The stated rule is broader than that. Rather, the court seems to have adopted a federal holding on the issue when it quotes Green v. United States (1961), 365 U.S. 301, 305, in its direction that "[J]udges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing."
Notwithstanding this broad rule, however, we must conclude that, in this matter the court nevertheless satisfied the standard. The court clearly and unambiguously asked for statements "* * * that counsel or Mr. Davis wish to make * * *." In our view, this leaves no reasonable room for doubt that "Mr. Davis" was invited to speak. Accordingly, appellant's fourth assignment of error is not well-taken.
 V.
Appellant, in his fifth assignment of error, contends that he suffered from ineffective assistance of counsel to the extent that any of the errors contained in his brief are deemed waived as having not been properly preserved. Appellant does not direct our attention to any specific instance of counsel deficiency, thereby failing to comply with the requirements of App.R. 16(A)(3). Moreover, absent such specifics, appellant fails to make the threshold showing required for an ineffective assistance claim as provided for in Strickland v. Washington (1984),466 U.S. 668. Accordingly, appellant's fifth assignment of error is not well-taken.
 VI.
In his final assignment of error, appellant argues that the trial court should have granted his motion for acquittal, pursuant to Crim.R. 29(A), because there was insufficient evidence presented to support his conviction.
In a review of a claim for the sufficiency of the evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found all the essential elements of the crime proven beyond a reasonable doubt. Statev. Jones (1999), 90 Ohio St.3d 403, 413, citing Jackson v. Virginia
(1979), 443 U.S. 307, 319, and State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A judgment of acquittal, pursuant to the rule, may not be entered if the evidence is such that reasonable minds can reach different conclusions as to whether each essential element has been proven. State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus;State v. Dennis (1997), 79 Ohio St.3d 421, 430.
Appellant suggests that the state failed to present sufficient evidence of the use of force in the commission of the crime and his identity.
As the state points out, force is not an element of any of the crimes with which appellant was charged. With respect to identity, appellant seems to be of the impression that the only acceptable proof that he was responsible for these killings would be an eyewitness who testified that he was the shooter. This position is fallacious. Identity, like any other element of a crime, may be proved by circumstantial evidence.State v. Jenks, supra, at paragraph one of the syllabus. Here, the state presented evidence that appellant had a motive to kill Sonya Hayes and her unborn child, indeed had made statements threatening such actions; was one of three people, including the victim, who knew where she would be and when; and presented to police what proved to be a false alibi as to his whereabouts at the time of the shooting. We cannot say that this evidence is such that reasonable minds could not reach different conclusions as to appellant's identity as the shooter. Accordingly, appellant's sixth assignment of error is not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.