The STATE of Ohio, Appellee,

v.

BOYD, Appellant.

[Cite as *State v. Boyd* (1996), 110 Ohio App.3d 13.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15332.

Decided March 22, 1996.

14

*Carly J. Ingram,* Montgomery County Assistant Prosecuting Attorney, for appellee.

*William D. Rohrkaste,* for appellant.

FREDERICK N. YOUNG, Judge.

Nathaniel Boyd is appealing from his conviction, following a jury trial, on one count of aggravated robbery. The indictment also charged him with a firearms specification, but he was acquitted of that charge. For the trial, he voluntarily submitted to a polygraph examination pursuant to written agreement with the prosecution. He brings to us the following three assignments of error:

## I

"The trial court erred in entering judgment against the defendant in this case because the jury's verdict, finding the defendant did not possess a firearm in a special finding with regard to the weapons specification was inconsistent with the jury's verdict finding the defendant guilty of aggravated robbery."

## II

"The court erred in unduly restricting the scope of the defendant's cross-examination of the state's expert witness, concerning the polygraph examination, resulting in a denial of the defendant's right to confront witnesses against him and his right to due process of law."

## III

"The prosecut[ing] attorney's comments regarding the results of the polygraph examination amounted to prejudicial prosecutorial misconduct, which justified reversal of the conviction in this case."

We will discuss the first and third assignments of error before turning to the second.

The charge of aggravated robbery specifies that if any person in the course of attempting or committing a theft offense has a deadly weapon or dangerous ordnance on him, or under his control, he can be found guilty of aggravated robbery, an aggravated felony in the first degree. R.C. 2911.01. The firearms specification, of which Boyd was acquitted, makes a separate crime out of having a firearm while the robbery offense is being committed. Thus, the verdicts on the two counts are facially contradictory, and Boyd argues that therefore his conviction of aggravated robbery should be reversed. This court has on at least two previous occasions rejected the inconsistent-verdict argument as a grounds for reversal. *State v. Talley* (Dec. 29, 1993), Montgomery App. No. 13683, unreported, 1993 WL 541633; *State v. Wilson* (Jan. 21, 1992), Clark App. No. 2803, unreported, 1992 WL 15976. In both cases the defendant was charged with felonious assault and with a firearm specification, and in both cases the

defendant was found guilty of the felonious assault but not guilty of the firearm specification. In *Wilson,* this court explained its position on inconsistent verdicts as follows:

"The issue of the validity of inconsistent verdicts was first considered by the Ohio Supreme Court in *Browning v. State,* where the following rule was set forth:

" ' "A verdict will not be set aside as inconsistent, or uncertain, because it finds differently as to counts in which there is no material difference." * * * [E]ach count of an indictment charges a complete offense; that the separate counts of an indictment are not interdependent, but are, and necessarily must be, each complete in itself, and that in determining the effect of a verdict that responds by designation to a given count the other counts of the indictment will be ignored, and the response of the jury to such other counts likewise ignored; that an inconsistency does not arise, unless it arises out of inconsistent responses to the same count.'

"*Browning v. State* (1929), 120 Ohio St. 62, 71–72 [165 N.E. 566, 569], accord *State v. Adams* (1978), 53 Ohio St.2d 223 [7 O.O.3d 393, 374 N.E.2d 137]. In a following case, the Supreme Court elaborated on its explanation of this issue, finding that 'specifications are considered after, and in addition to, the finding of guilt on the principal charge.' *State v. Perryman* (1976), 49 Ohio St.2d 14, 26 [3 O.O.3d 8, 15, 358 N.E.2d 1040, 1048], accord *State v. Mapes* (1985), 19 Ohio St.3d 108 [19 OBR 318, 484 N.E.2d 140].

"Other Ohio appellate courts considered this issue and reached identical conclusions. In *State v. Woodson* (1985), 24 Ohio App.3d 143 [24 OBR 231, 493 N.E.2d 1018], the appellant argued that the jury's verdict finding him guilty of aggravated robbery and not guilty of the weapon specification resulted in an inconsistent verdict. In affirming the conviction, the Franklin County Court of Appeals relied on the findings of the United States Supreme Court in *Dunn v. United States* (1932), 284 U.S. 390 [52 S.Ct. 189, 76 L.Ed. 356], and *United States v. Powell* (1984), 469 U.S. 57 [105 S.Ct. 471, 83 L.Ed.2d 461], wherein the Supreme Court rejected the claim that allegedly inconsistent verdicts, where the jury found the defendant guilty on one count and not guilty on two others, entitled the defendant to be discharged.

" * * *

"This court considered this issue in *State v. Simmons,* where the appellant contended that a reversal was required due to the alleged inconsistency between the jury's finding of guilty as to the principal charge of having weapons under disability and the finding of not guilty as to the firearm specification. *State v. Simmons* (May 24, 1990), Mont.App. No. 11426, unreported [1990 WL 68929]. In affirming the conviction, the court found that, 'a finding on a specification that is

inconsistent with a guilty finding on the principal charge will not undermine the guilty finding on the principal charge where sufficient evidence supports the guilty finding on the principal charge.' "

We adhere to the reasoning and holdings of *Talley* and *Wilson* and overrule the first assignment of error.

■■■ In his third assignment of error, Boyd argues that a prosecutor's comment in his opening remarks to the jury constituted such prejudicial misconduct as to justify reversal of his conviction. The actual statement that the prosecutor made which Boyd objects to was that the jury was going to hear about a polygraph test and that it constituted *"scientific proof* as to whether or not he [defendant] was involved in this situation." (Emphasis added.) This comment by the prosecutor was not objected to by the defendant and therefore cannot be raised on appeal unless it rises to the level of plain error, which is an error or defect in the trial proceedings affecting substantial rights, where "but for the error the outcome of the trial clearly would have been otherwise." *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. Furthermore, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, syllabus. Moreover, "the conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400. When a prosecutor embarks on or embraces "a pattern of repeated or egregious abuse," *id.,* reversal on such grounds of prosecutorial misconduct may be justified, but Boyd did not even accuse the prosecutor of such conduct here. The prosecutor's statement of "scientific proof" might have been a bit out of line but it hardly rises to the level of plain error. The court gave the proper instruction to the jury regarding the use of the polygraph evidence and there was certainly sufficient other evidence, outside the polygraph examination, to support the jury's verdict that Boyd was guilty of aggravated robbery. There is not the slightest indication that the jury would have found the defendant innocent without that single remark of the prosecutor. *United States v. Hasting* (1983), 461 U.S. 499, 508–509, 103 S.Ct. 1974, 1980–1981, 76 L.Ed.2d 96, 105–106. The third assignment of error is overruled.

In a second assignment of error, Boyd argues that his counsel was unduly restricted during counsel's cross-examination of the state's expert polygraph witness and therefore he was denied his right to confront witnesses and his right to due process of law. The polygraph test results and testimony of the examiner were presented at trial pursuant to an agreement between the parties, which was a written stipulation providing for the defendant's submission to the test and its

subsequent admission at trial by the graphs and the examiner's opinion thereon, whether by either the defendant or the state. This stipulation tracks the conditions for allowing the admission of a polygraph test set forth by the Supreme Court of Ohio in *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318. In the stipulation, the defendant waived "any and all objections to such testimony as to the competency, *weight,* relevancy, remoteness or the admissibility of such testimony based on public, legal, judicial, social policy, due process of law and/or such rules of evidence as might otherwise govern." (Emphasis added.)

 The restriction in his cross-examination of the polygraph examiner which Boyd cites as error appears as follows:

"Q. Based upon your training and the training you took prior to taking this test, what number of false results would you expect in a hundred tests, for example?

"MR. SCHIFF [representing the state]: Objection.

"THE COURT: Overruled.

"THE WITNESS: By false results, you mean examiner error?

"Q. Either examiner or an incorrect reading?

"A. The APA—

"MR. SCHIFF: Can we approach?

" * * *

"THE COURT: I am going to sustain the objection, but I think, for the Court of Appeals, I think you better get that agreement in the record.

"MR. SCHIFF: Okay, I am going to have to get another copy. I will get a copy.

"THE COURT: Better do that.

"BEFORE THE JURY:

"MR. SCHIFF: So the record is clear, that objection was sustained?

"THE COURT: Yes."

The state argues that that question to the examiner went to the weight of the examiner's testimony and was therefore properly blocked by the trial court pursuant to the written stipulation of the parties. We find, however, that the question clearly goes to "the limitations of and possibilities of error in the technique of polygraph interrogation," which the Supreme Court has ruled is available to the defense, regardless of an agreement by the parties to admit the

results of a polygraph examination. *State v. Souel, supra,* 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, syllabus.

The quoted limitation of the use of polygraph examinations at trial is in addition to the requirement that the parties agree to its admission; therefore, the parties may not agree, at least in advance of trial, that the polygraph examiner may not be examined concerning the possibilities for error in the technique of polygraphic interrogation. Any purported agreement to that effect would violate the public policy of this state, which permits consideration of the results of polygraph examinations only under certain specific conditions. The cited condition is most important, since it protects against the possibility that a jury may consider infallible a polygraph examiner's opinion concerning the veracity of the examinee.

In the case before us, the parties did not agree to waive the right to cross-examine the polygraph examiner concerning the limitations of and possibilities for error in the technique of polygraphic interrogation. To the contrary, the agreement merely waived Boyd's right to object to the *admissibility* of this evidence. At no time did Boyd interpose an objection to the admissibility of the polygraph examination. To the contrary, he merely attempted to exercise his right, guaranteed under *State v. Souel, supra,* to cross-examine the polygraph examiner concerning the limitations of and possibilities for error in the technique of polygraphic interrogation.

In our opinion, the trial court impermissibly interfered with Boyd's right to cross-examine the polygraph examiner concerning the limitations of and possibilities for error in the technique of polygraphic interrogation, in violation of the rule laid down in *State v. Souel, supra.*

The second assignment of error is sustained. The judgment is reversed and the case is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

FAIN and WOLFF, JJ., concur.