{¶ 1} Appellant, Antwon Fair, appeals his conviction for aggravated robbery. After a thorough review of the record and for the reasons set forth below, we affirm.
 {¶ 2} On October 18, 2006, the Cuyahoga County Grand Jury returned a two-count indictment against appellant. Count One charged him with aggravated robbery, in violation of R.C. 2911.01, a first degree felony with one-year and three-year firearm specifications. Count Two charged him with having a weapon while under a disability, in violation of R.C.2923.13. On March 20, 2007, a jury trial commenced as to Count One. At the close of the state's case, appellant moved the court under Crim.R. 29 for acquittal, which was denied. Defense counsel did not present witnesses, but, upon resting, renewed his Crim.R. 29 motion. The court again denied appellant's motion. *Page 2 
 {¶ 3} On March 23, 2007, the jury returned a guilty verdict on the aggravated robbery charge, but found appellant not guilty on the one-year and three-year firearm specifications. Count Two was tried to the bench, and the trial court found appellant not guilty of that charge. The court sentenced appellant to four years in prison on Count One.[1] On April 3, 2007, appellant filed this appeal.[2]
 {¶ 4} The state called five witnesses to testify as to the events leading to appellant's arrest. The victim of the alleged aggravated robbery testified that a man approached him on the evening of October 4, 2006 on a dark, abandoned street, while he was walking to a local K-Mart to pick up his sister from work. He testified that the man held a silver .45 weapon up to him and demanded, "Give me your dope." When the victim told the assailant he did not have any dope, the assailant allegedly asked him what he did have. The victim testified that he told the assailant he had a cell phone and three dollars, which the assailant demanded the victim give him. The victim next testified that the assailant took his cell phone and money, and the victim ran to K-Mart, where he told his sister he had been robbed. The victim *Page 3 
also testified that, on the night he was robbed, the assailant was wearing a black hoodie and had a gold "grill" on his teeth.[3]
 {¶ 5} The victim further testified that after school on October 7, 2006, while walking to a nearby convenience store with his sister, brother, aunt, and some friends, he spotted appellant and recognized him as the person who had robbed him on October 4. He testified that his aunt was the first to notice appellant across the street from where they were walking, and the victim crossed the street under the pretense of going into the store. He also testified that he saw appellant near the clothing store where he worked, and he told his three co-workers that appellant was the same person who had robbed him. The victim testified that his co-workers confronted appellant, who denied robbing the victim and then threatened him for lying. The victim then testified that he and his sister and aunt contacted the police to identify appellant as the person who had robbed him on October 4. Finally, he testified that the police asked him to identify appellant after they had arrested him, and, at that time, appellant was wearing a gray hoodie.
 {¶ 6} The victim's aunt, Tsara Butler, testified that she believed she knew the identity of the man who had robbed her nephew from her nephew's description of him on the night of the robbery. She also testified that she had seen appellant in the neighborhood on several occasions prior to the robbery. Tsara testified that a *Page 4 
couple of days after the robbery, October 7, she, her nephew, niece, and some friends were walking home from school, and they saw appellant in front of a convenience store. She testified that she walked past appellant and heard him say, "[t]hat's the nigger that I robbed the other day." She then asked her nephew if appellant was the person who robbed him. She testified that her nephew crossed the street to get a better look at appellant; he then told her that appellant was the person who robbed him.
 {¶ 7} The victim's sister testified to many of the same facts that the victim and their aunt had testified to, but her testimony was that appellant had a silver grill. She also testified that he was wearing a black jacket, even though the victim testified that appellant was wearing a gray hoodie on the day he was arrested.
 {¶ 8} The other witnesses for the state included the victim's mother, Detective Greg Cook, and Officer Michael Konn. The victim's mother testified to the events on the night of the robbery and her son's account of what had happened to him. Detective Cook testified to checking out appellant's alibi and to taking the victim's statement. Officer Konn testified to the events that led to appellant's arrest on October 7. While the testimony of these three witnesses was vital to the trial, appellant's assignments of error rest squarely on the testimony of the victim, his sister and aunt, who identified him as the person who committed the robbery. *Page 5 
 Ineffective Assistance of Counsel {¶ 9} In his first assignment of error, appellant argues that his attorney's representation was ineffective for several reasons. Specifically, he argues that his attorney did not contest the factual discrepancies between the testimony of the witnesses because he did not review the witnesses' statements to the police. He also argues that his attorney did not object to the prosecutor's leading questions to the state's witnesses and that his attorney should have filed a motion to suppress identification testimony. The state contends that defense counsel's representation reflects competent trial strategy and did not fall to the level of ineffective assistance.
 {¶ 10} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 11} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. *Page 6 
 {¶ 12} A review of the transcript does not support reversal of appellant's conviction on the grounds of ineffective assistance of counsel. Appellant's attorney cross-examined all of the state's witnesses in great detail. He even brought to light several instances where their trial testimony seemed inconsistent. Although we may not understand why defense counsel did not request the written statements the witnesses made to the police, we cannot speculate on what the statements contained and whether they contained inconsistencies. Appellant cannot point to any actual discrepancies between the sworn testimony and the police statements because he failed to request the statements; therefore, the statements are not before this court. Appellant's argument is speculative at best.
 {¶ 13} With respect to the inconsistency regarding the dates, specifically whether the witnesses were walking home from school on the date appellant was arrested, which was a Saturday, defense counsel pursued that line of questioning with Tsara Butler. On redirect, the state established that Tsara, like the other witnesses, may have been confused about the date. Certainly, the fact that the victim's sister said appellant was wearing a black jacket on the date they saw him, and the victim said he was wearing a gray hoodie on the day appellant was arrested, suggests these events happened on two separate days. This issue then becomes a matter of credibility for the jury to weigh, but it is clear from the transcript that defense counsel zealously pursued this inconsistency on cross-examination. *Page 7 
 {¶ 14} With respect to appellant's argument that his attorney should have objected to the state's leading questions, we find no merit in this argument. Setting aside defense counsel's failure to object as constituting a waiver, the Ohio Rules of Evidence do not forbid the use of leading questions in direct examination, provided they are being used to develop or elicit testimony. See Evid.R. 611(C). Furthermore, the court in State v. Howard, Montgomery App. No. 20575, 2005-Ohio-3702, held that failure to object to leading questions in direct examination "will almost never rise to the level of ineffective assistance of counsel." The trial court has broad discretion to allow the use of leading questions. State v. Lewis (1982), 4 Ohio App.3d 275. The state was properly eliciting routine facts from its witnesses. The fact that some of the witnesses were teenagers lends more support to the trial court's decision to allow leading questions to keep the testimony on track and the responses understandable.
 {¶ 15} Finally, appellant argues that his trial attorney should have filed a motion to suppress eyewitness identification testimony. The gist of appellant's argument is that there is no evidence tying him to the robbery except the identification outside the convenience store and the cold stand performed three days after the alleged robbery took place.
 {¶ 16} In Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375, the United States Supreme Court held that an identification derived from unnecessarily suggestive *Page 8 
procedures, which has a likelihood of leading to a misidentification, violates a defendant's right to due process. Accordingly, a simply "suggestive identification procedure" will not result in a suppression of the identification unless the procedure impacts the reliability of the identification itself. Id. ("[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.")
 {¶ 17} In State v. Williams, 172 Ohio App.3d 646, 2007-Ohio-646, this court addressed the admissibility of identification testimony that arises from relying on cold stands or one-on-one show-ups.[4] "Courts employ a two-step process to determine the admissibility of identification testimony. The first step focuses only upon whether the identification procedure was impermissibly suggestive. Biggers places show-ups (or cold stands) in this category. See, e.g., State v.Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061; State v.Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682. *Page 9 
 {¶ 18} The second part of the inquiry then focuses upon five factors necessary to assess the reliability of the identification, despite the taint of the show-up. These five factors are: (1) the witness's opportunity to view the defendant at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's description of the defendant prior to the identification; (4) the witness's level of certainty when identifying the defendant at the confrontation; and (5) the length of time elapsed between the crime and the confrontation." Williams, supra.
 {¶ 19} We are troubled by the fact that appellant was subjected to an impermissibly suggestive identification procedure, i.e., a cold stand. The robbery took place at ten o'clock at night on a darkened street, necessarily calling into question the victim's ability to view his assailant; the crime itself lasted a couple of minutes at most; the victim offered some identifying features of his assailant to his family and friends, who then suggested to the victim a possible suspect; and, the cold stand took place three days after the alleged robbery. These factors support a finding that the identification process might be tainted and would have supported defense counsel's moving the trial court to suppress the identification.
 {¶ 20} Nonetheless, we decline to reverse the trial court on appellant's claim of ineffective assistance of counsel on this issue. During cross-examination at trial, the victim's aunt, Tsara Butler, testified that she heard appellant say "That's the nigger I *Page 10 
robbed the other day." (Tr. 320.) She also testified that she knew appellant was referring to her nephew because "there was no one else in the area" besides her nephew, and she heard appellant say, "I recognize him by the grill." (Tr. 321.) Tsara testified that her nephew wears a grill.
 {¶ 21} Appellant was positively identified by a witness the jury found credible. Even if defense counsel had filed and been granted a motion to suppress the identification from the cold stand, there was still identification evidence at trial upon which appellant could have been found guilty.
 {¶ 22} We do not find that defense counsel's representation fell to the level of ineffective assistance; therefore, we overrule appellant's first assignment of error.
 Inconsistent Verdicts {¶ 23} In his second assignment of error, appellant argues that the verdicts on Counts One and Two are inconsistent. Specifically, he argues that it is inconsistent for the jury to find him guilty of aggravated robbery, but not guilty on the two firearm specifications or on the charge of having a weapon while under a disability. We do not agree.
 {¶ 24} Ohio case law is clear that the verdicts handed down to appellant on Counts One and Two are not inconsistent. The court inState v. Boyd (1996), 110 Ohio App.3d 13, faced an identical situation. In Boyd, the court recognized that "[t]he charge of aggravated robbery specifies that if any person in the course of *Page 11 
attempting or committing a theft offense has a deadly weapon or dangerous ordinance [sic] on him, or under his control, he can be found guilty of aggravated robbery, an aggravated felony in the first degree. R.C. § 2911.01. The firearms specification, of which he was acquitted, makes a separate crime out of having a firearm while the robbery offense is being committed. Thus, the verdicts on the two counts are facially contradictory and Boyd argues therefore his conviction of aggravated robbery should be reversed. This court has on at least two previous occasions rejected the inconsistent verdict argument as a grounds for reversal. State v. Talley (Dec. 29, 1993), Montgomery App. No. 13683, unreported; State v. Wilson (Jan. 21, 1992), Clark App. No. 2803, unreported. In both cases the defendant was charged with felonious assault and with a firearm specification, and in both cases defendant was found guilty of the felonious assault but not guilty of the firearm specification." Boyd, supra.
 {¶ 25} The Boyd court cited to the Wilson court's reliance onBrowning v. State (1929), 120 Ohio St. 62, 165 N.E. 566, regarding inconsistent verdicts "where the following rule was set forth: `A verdict will not be set aside as inconsistent, or uncertain because it finds differently as to counts in which there is no material difference * * * Each count of an indictment charges a complete offense; that the separate counts of an indictment are not interdependent, but are, and necessarily must be, each complete in itself, and that in determining the effect of a verdict that *Page 12 
responds by designation to a given count the other counts of the indictment will be ignored, and the response of the jury to such other counts likewise ignored; that an inconsistency does not arise, unless it arises out of inconsistent responses to the same count.'"Wilson, citing Browning v. State, supra, accord State v. Adams (1978),53 Ohio St.2d 223, 374 N.E.2d 137.
 {¶ 26} It is entirely proper for the jury to find appellant guilty of aggravated robbery without a firearm specification. Further, it is proper for the court to find appellant not guilty of having a weapon while under a disability despite the jury's guilty verdict on aggravated robbery. Despite appellant's argument that this court should reconsider this issue, we decline to do so in light of legal precedent on this exact issue. Therefore, we overrule appellant's second assignment of error.
 Sufficiency and Manifest Weight of the Evidence {¶ 27} In his third assignment of error, appellant argues that the evidence was not sufficient to sustain a guilty verdict and that the verdict was against the manifest weight of the evidence. In raising these arguments, appellant focuses on three factors: (1) that the witnesses cannot be telling the truth because the date on which they claim to have seen appellant was a Saturday, and they could not have been walking home from school that day; (2) that the identifications of appellant by the witnesses were not consistent; and, finally, (3) that the verdicts were inconsistent, so the jury must have lost its way. *Page 13 
 {¶ 28} We have already rejected the idea of inconsistent verdicts in overruling appellant's second assignment of error. We will therefore address appellant's other contentions.
 {¶ 29} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, citing Jackson v.Virginia (1979), 443 U.S. 307. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988),39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259; Jackson v.Virginia, supra.
 {¶ 30} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of *Page 14 
the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squirev. Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 31} R.C. 2911.01 states that "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; (2) Have a dangerous ordnance on or about the offender's person or under the offender's control; (3) Inflict, or attempt to inflict, serious physical harm on another."
 {¶ 32} The state produced sufficient evidence on all elements of the charge of aggravated robbery. A review of the trial testimony of the three witnesses who identified appellant as the victim's assailant does not support appellant's argument that there was insufficient evidence to support a guilty verdict on the charge of aggravated robbery.
 {¶ 33} What appellant is really arguing is that the verdict is against the manifest weight of the evidence in light of the discrepancies in the testimony of the three identifying witnesses. Appellant focuses primarily on the fact that the witnesses could not have been walking home from school on Saturday, October 7, *Page 15 
the date appellant was arrested. The state did redirect its questions to Tsara Butler, and she acknowledged that it may have been Friday, October 6. This then becomes a matter of credibility for the jury to decide. The witnesses were consistent in their respective testimony about seeing appellant by the convenience store and again in a pizza shop. The jury could believe that they were telling the truth about recognizing appellant, even if they could not remember the exact date on which he was arrested.
 {¶ 34} Appellant also focuses on the conflicting testimony of the witnesses regarding whether appellant was wearing a black hoodie or a gray hoodie and whether his grill was gold or silver. The jury was presented with this conflicting testimony and determined that, in essence, the witnesses were credible in their identification of appellant, especially in light of the testimony of the victim's aunt that she had seen appellant numerous times around the neighborhood and recognized him from the description her nephew gave her after the robbery.
 {¶ 35} The evidence presented to the jury, when weighed, would support a guilty verdict on the charge of aggravated robbery. There is nothing in the record to suggest that the jury lost its way; therefore, we overrule appellant's third assignment of error. *Page 16 
 Sentence {¶ 36} In his fourth assignment of error, appellant argues that he is entitled to the presumptive minimum sentence. While he acknowledges that this court has applied the ruling in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, to cases similar to his, he makes this argument in order to preserve it on appeal.
 {¶ 37} In following this court's decision in State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, we overrule appellant's fourth assignment of error.
 {¶ 38} The Ohio Supreme Court's recent decision in Foster renders appellant's assignment of error without merit. In Foster, the Court found several sections of the revised code unconstitutional, including R.C. 2929.14(B), and severed the offending portions from the statutes. As a result, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or state reasons for imposing more than the minimum sentences.Foster, supra.
 {¶ 39} If Foster did not apply to appellant, he would enjoy a presumption of minimum concurrent sentencing. The ex post facto clause of Article 1, Section 10 of the United States Constitution prohibits any legislation that "changes the punishment, and inflicts greater punishment, than the law annexed to the crime, when committed."Miller v. Florida (1987), 482 U.S. 423,429, citing Calder v. Bull
(1798), 3 Dall. 386, 390. *Page 17 
 {¶ 40} This court recently addressed this issue and, after a thorough analysis of state and federal law, found as follows: "In the instant case, Mallette had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding of Foster does not violate Mallette's due process rights or the ex post facto principles contained therein." Mallette, supra.
 {¶ 41} We therefore find that the remedial holding of Foster does not violate appellant's due process rights or the ex post facto principles contained therein. Accordingly, appellant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 18 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and CHRISTINE T. McMONAGLE, J., CONCUR *Page 19 
 APPENDIX
Appellant's four assignments of error:
I. Defendant Antwon Fair was denied effective assistance of counsel.
II. The verdict is inconsistent.
III. Antwon Fair's conviction should be reversed due to insufficiency of evidence and a failure of the state to carry the manifest weight of the evidence burden.
IV. Antwon Fair is entitled to a presumptive minimum sentence because a greater sentence would violate the Ex Post Facto and Due Process Clauses of the United States Constitution.
[1] Appellant states in his brief that after sentencing, he filed a Crim.R. 29 motion for acquittal, although he mistakenly filed it under the wrong case number. He asserts that the court knows of this motion and will be ruling on it soon. A review of the docket shows that appellant filed a pro se petition to vacate or set aside judgment of conviction or sentence on October 25, 2007. Further, the docket reflects that the trial court denied this petition by granting the state's motion to dismiss appellant's petition on November 29, 2007.
[2] Appellant's four assignments of error are included in the Appendix of this Opinion.
[3] In hip hop culture, a grill is a type of jewelry worn over the teeth; they are made of metal and are generally removable.
[4] The United States Supreme Court and the Sixth Circuit have long recognized the danger inherent in eyewitness identifications resulting from show-ups, even if these courts have found, under the totality of the circumstance, the identification was reliable. See Stovall v.Denno (1967), 388 U.S. 293, 87 S.Ct. 1967; Gregory v. Louisville (C.A., 2006), 444 F.3d 725. However, as Stovall makes clear, the admission of evidence of a show-up without more does not violate due process. *Page 1