JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Robert Smith ("appellant") appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the case, on February 8, 2005, appellant was indicted in CR-468424 for three counts of rape in violation of R.C. 2907.02(A)(2), three counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of kidnapping in violation of R.C. 2905.01(A)(2)-(4). The charges of felonious assault and kidnapping both contained a sexual motivation specification under R.C. 2941.147.
 {¶ 3} On August 9, 2005, appellant was indicted in CR-469157 for three counts of rape in violation of R.C. 2907.02(A)(2), one count of kidnapping in violation of R.C. 2905.01(A)(2), one count of intimidation in violation of R.C. 2921.04(B), one count of retaliation in violation of R.C. 2921.05(B), and one count of aggravated burglary in violation of R.C. 2911.11(A)(1). The kidnapping and burglary charges contained sexual motivation specifications under R.C. 2941.147.
 {¶ 4} On December 1, 2005, a hearing was held on appellant's motion to consolidate the cases, which was granted. Trial commenced on February 6, 2006, and on February 14, 2006, the jury found appellant not guilty of felonious assault, but guilty of the lesser-included offense of assault in violation of R.C. 2903.13. The jury also returned guilty verdicts to the *Page 4 
charges of kidnapping without a sexual motivation specification, intimidation, and retaliation. The jury found appellant not guilty of all other charges.
 {¶ 5} On March 16, 2006, appellant was sentenced to four years for kidnapping, three years for intimidation, three years for retaliation, and six months for assault. The sentence for intimidation was to run concurrently with the sentence for retaliation, but consecutive to the sentence for kidnapping. The sentence for assault was to run concurrently with all other sentences, for a total sentence of seven years. On the same day, Lynn Loritts was appointed as appellant's counsel. On June 28, 2006, a motion for leave to file a delayed appeal was filed. That motion was granted on July 24, 2006.
 {¶ 6} According to the facts, the victim, A.M., was attacked by appellant. A.M. is 41 years old and lives in Cleveland, Ohio. A.M. testified that she first met appellant in 2002 or 2003, however, they did not begin to have a romantic relationship until January 2005. A.M. testified that this relationship included consensual sexual relations. She testified that she decided to end her relationship with appellant because he did not have a job, and she thought he was trying to move in with her.
 {¶ 7} On February 6, 2005, appellant called and asked to come over to A.M.'s house, and she told him no. Appellant accused her of having a man in her apartment and came over and kicked in her door. Appellant realized the man in A.M.'s apartment was her cousin, and he left. Two days later, on February 8, 2005, appellant called A.M. and said he would come over and fix the door. *Page 5 
 {¶ 8} Appellant's cousins were visiting at the time, and A.M. testified that when appellant arrived, "he had this look on his face and [appellant's cousins] practically ran. In fact, [one cousin] ran and dropped all the groceries, he left those, and the next thing I know, I saw a fist coming and [appellant] hit me."[1] A.M. further testified that appellant began calling her a bitch and a whore and also punched her in the stomach, because he said if she was pregnant he wanted to "punch it right out of her." A.M. testified that appellant then sexually assaulted her. A.M. was able to call for help only after she convinced appellant to let her use the bathroom which allowed her to get to her phone.
 {¶ 9} A.M. testified that when she saw the ambulance and police lights, she ran out of the apartment. She told the authorities what transpired and was taken to the hospital by ambulance. A rape kit was taken at the hospital, and A.M. was treated and released that same day. As part of the rape kit procedure, A.M. informed the nurse that she had consensual sex with appellant on February 7, 2005. The nurse noted that A.M. had two red bruises just above her knee, a stain on her thigh, a swollen left side of her face, an abrasion on her chin, and abrasions and bruises on and in her mouth. A.M. further testified that on February 11, 2005, she returned to the hospital for follow-up treatment for her concussion.
 {¶ 10} Approximately three weeks after the assault, appellant approached A.M. and asked her not to press charges. A.M. testified that appellant was not aware that she had already given a statement to the police concerning the February 8, 2005 incident. A.M. *Page 6 
further testified that after she testified at a grand jury proceeding, appellant came to her apartment drunk, looking for a place to sleep, and she let him sleep there. A.M. testified that after a few hours, she told appellant he had to leave. She called the police after appellant left the apartment, but they could not locate him.
 {¶ 11} Appellant came back later and began threatening A.M. for calling the police. Appellant threatened, beat, and sexually assaulted A.M. A.M. called 911 from her apartment, but spoke in code so that appellant could not hear her. A.M. further testified that appellant dozed off, and she ran to a neighbor's house and called the police.
 II. {¶ 12} Appellant's assignments of error provide the following:
 {¶ 13} "Appellant's guilt was not proven beyond a reasonable doubt and was not supported by the evidence."
 {¶ 14} "Appellant's conviction is against the manifest weight of the evidence."
 {¶ 15} "Appellant was denied his right to confront and cross-examine witnesses, his right to present a defense and his rights to a fair trial and due process of law, in violation of the U.S. Constitution's Fifth,Sixth and Fourteenth Amendments and Article I, ___ 10 and 16 of the Ohio Constitution, when the court improperly applied the rape shield act to bar evidence that the alleged victim had previously made unfounded accusations that three other individuals had sexually assaulted her." *Page 7 
 {¶ 16} "Appellant's state constitutional right to a grand jury indictment and state and federal constitutional rights to due process were violated when his indictment omitted the specific predicate felony offense underlying the kidnapping charge in Count 12."
 {¶ 17} "The trial court plainly erred in instructing the jury that the predicate felony offense for Count 12 could include rape, gross sexual imposition, and/or felonious assault."
 {¶ 18} "The jury's verdict on Count 12 was internally inconsistent and thereby violated appellant's conviction due process rights."
 {¶ 19} "The trial court erred in failing to merge appellant's convictions for intimidation and retaliation as allied offenses when both convictions were based on the same conduct and committed with the same animus."
 {¶ 20} "Appellant was denied his due process right to a fair trial as a result of prosecutorial misconduct in closing argument."
 III. {¶ 21} Appellant argues in his first two assignments of error that his guilt was not supported by the evidence and was against the manifest weight of the evidence. Due to the substantial interrelation between these assignments of error, we shall address them together.
 {¶ 22} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The *Page 8 
relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 23} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins, supra, at 387. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 24} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, *Page 9 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.
 {¶ 25} In the instant case, appellant was convicted of kidnapping, intimidation, and retaliation.
 {¶ 26} Kidnapping, R.C. 2905.01(A), provides the following:
 "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 (1) To hold for ransom, or as a shield or hostage;
 (2) To facilitate the commission of any felony or flight thereafter;
 (3) To terrorize, or to inflict serious physical harm on the victim of another;
 (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;
 (5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority."
 {¶ 27} Intimidation, R.C. 2921.04, provides in pertinent part:
 "Intimidation of attorney, victim or witness in criminal case.
 (B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim *Page 10 
of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 R.C. 2921.05, Retaliation, provides the following:
 "(A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.
 (B) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges.
 (C) Whoever violates this section is guilty of retaliation, a felony of the third degree."
 {¶ 28} Appellant argues in his first two assignments that the medical records and the testimony do not support the fact that A.M. was severely beaten on the first occasion. Appellant also argues that the jury's guilty findings on intimidation and retaliation are inconsistent with the jury's belief regarding consensual sex on the part of appellant and A.M. Appellant claims that it would be inconsistent for him to not sexually assault A.M., but hold her against her will.
 {¶ 29} Appellant further argues that because A.M. lied about her dating history, is a recovering addict, and because he was acquitted of many of the charges, his conviction is not supported by the evidence. Given the evidence in the record, we find appellant's arguments to be unpersuasive.
 {¶ 30} The evidence in the record demonstrates that appellant committed a kidnapping on July 25, 2005. A.M. testified that appellant rushed into her apartment on that day. A.M. *Page 11 
further testified that she told him to leave and they began to struggle. A.M. also testified that after appellant came into her apartment, he told her he was going to rape her. A.M. was consistent in relaying this event to Dr. Wolford, who testified that A.M. told him that appellant rushed into her apartment and then raped her. Based on these corroborated facts as well as other evidence, the jury chose to credit specific portions of A.M.'s testimony. The jury found appellant entered A.M.'s apartment through the open door, and then after A.M. told appellant to leave, the two began to fight. This evidence was uncontradicted. The jury rightfully found that during this fight A.M. was restrained of her liberty, and appellant's intent in restraining A.M. of her liberty was to terrorize her.
 {¶ 31} The evidence in the case at bar demonstrates appellant used either force, threat, or deception to restrain A.M. of her liberty. In addition, appellant restrained A.M.'s liberty during the struggle by not allowing her to leave the apartment. The evidence further demonstrates that appellant's intent in restraining A.M. of her liberty was to terrorize her. We find the trial court's conviction for kidnapping to be proper.
 {¶ 32} The trial court's conviction for intimidation was also proper. A.M. testified that appellant told her that if he went to jail he would kill her or his family would kill her. When viewed in a light most favorable to the state, reasonable minds could have determined appellant told A.M. that he would make sure she was dead if he went to jail in an attempt to ensure that A.M. would not testify against him at trial. Based on the evidence in this case, reasonable minds could have concluded that the state provided all of the essential elements of intimidation beyond a reasonable doubt. *Page 12 
 {¶ 33} Moreover, A.M.'s testimony was uncontradicted and not vague or uncertain. The jury was well within its purview when it decided to credit various portions of A.M.'s testimony. The jury did not lose its way in convicting appellant of intimidation.
 {¶ 34} A.M. testified that appellant knew she had testified at the grand jury because her subpoena was accidently posted on appellant's sister's door. The record demonstrates appellant was at A.M.'s apartment on July 25, 2005 in an attempt to retaliate against A.M. because she had already testified against him at the grand jury proceeding. Based on the evidence presented and viewed in a light most favorable to the state, it was reasonable for the jury to determine appellant retaliated against A.M. because she had already testified to the grand jury.
 {¶ 35} A.M. testified that on February 8, 2005, appellant beat her. Her testimony was corroborated by Nurse Holtz who testified that A.M. had bruises above the knees, a swollen left side of her face, and abrasions and bruises on and in her mouth. The EMS respondent testified that he saw that A.M. had swelling on her face and a laceration in her mouth. A.M.'s testimony concerning the assault was largely corroborated. The jury decided to credit the testimony of various witnesses prior to determining appellant's actions did not rise to the level of felonious assault, but still merited a conviction for assault.
 {¶ 36} Accordingly, when the evidence is viewed in a light most favorable to the state, a reasonable juror could have found that all the essential elements of appellant's convictions were proven beyond a reasonable doubt. Moreover, nothing in the record demonstrates that the jury lost its way in convicting appellant of retaliation. *Page 13 
 {¶ 37} We find that the evidence demonstrates that the jury did not lose its way in convicting appellant of kidnapping, intimidation, retaliation, or assault. The jury was free to value some, but not all, of A.M.'s testimony. Contrary to appellant's arguments, the convictions are consistent with the acquittals for the remaining charges. Credible evidence was presented by the state in order to sustain appellant's convictions.
 {¶ 38} Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 39} Appellant argues in his third assignment of error that he was denied his right to confront and cross-examine witnesses, his right to present a defense, and his rights to a fair trial and due process of law. Specifically, appellant states that the lower court improperly applied the rape shield act to bar evidence that the victim had previously made accusations that three other individuals had sexually assaulted her.
 {¶ 40} Ohio's rape shield statute is R.C. 2907.02(D), and states as follows:
 "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 41} The Supreme Court in State v. Williams (1986),21 Ohio St.3d 33, 34, 487 N.E.2d 560, citing State v. Gardner (1979),59 Ohio St.2d 14, 391 N.E.2d 337, outlined the concerns behind the rape shield law:
 "First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the *Page 14 
reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process."
 {¶ 42} "It is within the trial court's sound discretion to determine the relevancy of evidence and to apply the rape shield law to best meet the purpose behind the statute." State v. Miller (1989),63 Ohio App.3d 479, 483, 579 N.E.2d 276.
 {¶ 43} "Where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved and, as a result, cross-examination on the accusation would be prohibited by R.C. _ 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into pursuant to Evid. R. 608(B)." State v. Boggs (1992), 63 Ohio St.3d 418, paragraph two of the syllabus.
 {¶ 44} In the instant case, A.M. testified that she was raped on three prior occasions. The lower court found that "sexual activity took place in each of the three instances."[2] The trial court based this decision on A.M.'s follow through with rape kits, which would be consistent with an individual that was raped. The lower court found that these three accusations were not unfounded and R.C. 2907.02(D) prohibited admission. The lower court's decision to not allow testimony of A.M.'s previous rapes complies with Boggs.
 {¶ 45} Accordingly, appellant's third assignment of error is overruled. *Page 15 
 {¶ 46} Appellant argues in his fourth assignment of error that his state constitutional right to a grand jury indictment and constitutional rights to due process were violated when his indictment omitted the specific predicate felony offense underlying the kidnapping charge in Count 12.
 {¶ 47} Appellant argues that the bill of particulars in this case does not provide any illumination as to the nature of the offense. Appellant relies on State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707, to support his argument that the lower court erred. However, we find appellant's reliance on Buehner to be misplaced. Buehner is distinguishable from the case at bar. The indictment in Buehner involved the ethnic-intimidation statute, R.C. 2903.21, aggravated menacing, while the instant case involves kidnapping, R.C. 2905.01, a sexual motivation specification, R.C. 2941.147, and a sexually violent predator specification, R.C. 2941.148.
 {¶ 48} Moreover, the Ohio Supreme Court previously held in State v.Landrum (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d 710, 724, that Crim. R. 7(B) authorizes indictments to utilize the words of the applicable section of the statute. The indictment in the case at bar tracks the wording of R.C. 2905.01 almost verbatim.
 {¶ 49} Accordingly, appellant's fourth assignment is overruled.
 {¶ 50} Due to the substantial interrelation between appellant's fifth and sixth assignments of error, we shall address them together. Appellant argues in these assignments of error that the trial court plainly erred in instructing the jury that the predicate felony *Page 16 
offense for Count 12 could include rape, gross sexual imposition, and/or felonious assault, and the jury's verdict on Count 12 was internally inconsistent.
 {¶ 51} We initially note that no objections were made regarding the jury instructions. "Failure to object to a jury instruction constitutes a waiver and any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise."State v. Underwood (1983), 3 Ohio St.3d 12, 3 Ohio B. 360,444 N.E.2d 1332, syllabus. In State v. Williford (1990), 49 Ohio St.3d 247, 251,551 N.E.2d 1279, the Supreme Court found that "we have repeatedly held that a failure to object before the jury retires in accordance with the second paragraph of Crim. R. 30(A), absent plain error, constitutes a waiver."
 {¶ 52} Assuming arguendo appellant had properly objected, his argument is still without merit.
 {¶ 53} Appellant's indictment for kidnapping stated:
 "and by force, threat or deception removed Jane Doe from the place where she was found or restrained her of her liberty for the purpose of facilitating the commission of a felony or the flight thereafter and/or engaging in sexual activity, as defined in Section 2907.01 of the Revised Code, with Jane Doe against her will."
 {¶ 54} Appellant argues that the jury instructions deprived him of a fair jury deliberation. Specifically, appellant argues that the jury instruction violated his right to be tried on the same facts presented to the grand jury, and his right to a unanimous guilty verdict was violated.
 {¶ 55} The prevailing rule in Ohio is that a general unanimity instruction, such as the one given in this case, will ensure that the jury is unanimous on the factual basis for a *Page 17 
conviction even where the indictment alleges numerous factual bases for liability. State v. Mercer, Cuyahoga App. No. 81923, 2003-Ohio-3530;State v. Johnson (1989), 46 Ohio St.3d 96, 105, 545 N.E.2d 636. Moreover, it is presumed that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Id., quoting Turner v. United States (1970), 396 U.S. 398,420, 24 L.Ed.2d 610, 90 S.Ct. 642.
 {¶ 56} In the instant case, the evidence was sufficient to find appellant guilty of kidnapping under any of the sections. Appellant rushed into the victim's apartment, she told him to leave, and they began to struggle. Appellant restrained A.M. during the struggle and did not allow her to leave the apartment. A.M. further testified that appellant entered her apartment to rape her. The trial court properly instructed the jury. Moreover, there is no evidence that the outcome of the trial could have been different. Appellant was properly convicted.
 {¶ 57} Appellant argues in his sixth assignment of error that his kidnapping conviction violates his due process rights. Appellant argues that the two theories advanced by the state were rejected by the jury in other counts, so his conviction is, therefore, inconsistent. We find this argument to lack merit.
 {¶ 58} "It is well-established by courts in Ohio that `a finding of guilty on a principal charge but not guilty on a specification attached to the charge does not render the verdict inconsistent and thus invalidate the guilty verdict on the principal charge, at least where legally sufficient evidence supports the guilty verdict on the principal charge.'" State v. *Page 18 Gardner, Montgomery App. No. 21027, 2006-Ohio-1130, at p. 32. See, also,State v. Allen, Hamilton App. No. C-060239, 2006-Ohio-6822, at p. 32;State v. Boyd (1996), 110 Ohio App.3d 13, 17; State v. Woodson (1985),24 Ohio App.3d 143. Moreover, "[i]nconsistency in a verdict does not arise out of inconsistent responses to different counts, but rather inconsistent responses to the same count." Id. at p. 33, citingState v. Adams (1978), 53 Ohio St.2d 223; State v. Lovejoy,79 Ohio St.3d 440, 1997-Ohio-371.
 {¶ 59} Here, the jury found appellant guilty of intimidation and retaliation. These felonies supply the basis for the underlying felony within the kidnapping charge. The jury was instructed that these convictions were felonies. Appellant's conviction for kidnapping is supported by competent credible evidence. This is consistent with restraining A.M.'s liberty to commit a felony.
 {¶ 60} Appellant was charged with kidnapping to engage in sexual activity. The fact that the jury found appellant not guilty of the sexual motivation specification cannot be considered when evaluating his kidnapping conviction. Sufficient evidence was presented that appellant engaged in sexual activity with A.M. on July 25, 2005.
 {¶ 61} Accordingly, appellant's fifth and sixth assignments of error are overruled.
 {¶ 62} Appellant argues in his seventh assignment of error that the trial court erred in failing to merge his convictions for intimidation and retaliation as allied offenses when both convictions were based on the same conduct and committed with the same animus.
 {¶ 63} R.C. 2941.25 governs the merging of allied offenses and provides: *Page 19 
 "(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. [But]
 (B) * * * Where his conduct results in two or more offenses of the same or similar kind committed separately or with separate animus as to each, * * * the defendant may be convicted of all of them."
 {¶ 64} While the statutory language of intimidation and retaliation is similar, each offense requires proof of an element that the other does not. Intimidation requires some threat or coercion intended to inhibit future activity, and retaliation requires an action taken in return for a past activity. Clearly, they are separate and distinct. And, the commission of one crime does not result in the commission of the other. Thus, because each offense requires proof of an element that the other does not, they are not allied offenses of similar import. State v.Solomon, Marion App. No. 9-03-58, 2004-Ohio-2795.
 {¶ 65} Having found that the prosecutor was clearly authorized to charge appellant with both intimidation and retaliation, appellant's seventh assignment of error is overruled.
 {¶ 66} Appellant argues in his last assignment of error that he was denied his due process right to a fair trial as a result of prosecutorial misconduct in closing argument.
 {¶ 67} When an appellant fails to object to any of the testimony regarding the above stated evidence, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. In the instant matter, appellant did not object to the prosecutor's alleged misconduct during his closing argument. As such, appellant has waived all but plain *Page 20 
error regarding these comments. State v. Slagle (1992),65 Ohio St.3d 597, 604, 605 N.E.2d 916; State v. Curry, Cuyahoga App. No. 89075,2007-Ohio-5721.
 {¶ 68} To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell, 75 Ohio St.3d 163, 166,1996-Ohio-100, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips,74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 69} The prosecutor's closing remarks do not constitute plain error. Appellant argues that the prosecutor's comments about justice were improper and rise to the level of reversal. We do not find merit in appellant's argument.
 {¶ 70} However, when the prosecutor's comments are viewed in their entirety, they are less likely to be taken out of context. The state is permitted to ask the jury to see that justice is done. State v.Barfield (Feb. 18, 1997), Butler App. No. CA96-05-094.
 {¶ 71} Defense counsel in the case at bar was questioning the credibility of the victim, and the prosecutor responded as follows:
 "First, what I want to touch on, what is the defense arguing here exactly? Well, he's arguing, first of all, this didn't happen, or if it did happen it's not proof beyond a reasonable doubt and, therefore, you have to throw up your hands, not guilty. No. That is not the case here. It is not — to come back with a not guilty would be the easy way out. How can we decide? The woman came *Page 21 
in and testified. How can we decide? That might be the easy way out but that is not your function. With the risk of sounding corny, what we are doing here, a jury, a judge, a man on trial facing his accusers, his accusers have to come to court and face him. What we are doing here happens in very few places in the world. But in the history of civilization, this is the best way that mankind has invented to come up with justice. And your job is to come up with justice, and it would be easy to say, well, we don't think there is enough here, there is no reason to talk about it, not guilty, let him walk out of the courtroom door a free man. That would be the easy way out. But that would not be justice."[3]
 {¶ 72} The state followed this comment with a discussion of the evidence presented. The state argued that this evidence proved each element of the crimes charged beyond a reasonable doubt. A review of the additional comments concerning justice that appellant mentioned are also not enough to warrant reversal. The prosecutor simply wanted the jury to do its job and determine what the facts were and apply those facts to the law.
 {¶ 73} Appellant further argues that the prosecutor was appealing for jury sympathy for the victim and suggesting that the victim should not have been subjected to having to testify at trial. A review of the record demonstrates no error on the part of the prosecutor in regard to appellant's claim. The prosecutor was not trying to elicit sympathy for the victim. The prosecutor was trying to show the jury that the victim did not have a motive to lie. This is a proper closing argument. When the prosecutor's comments are taken in context, the comments demonstrate that the victim had no reason to lie because her life is hard enough without having to go through this experience. The victim had no reason to fabricate what happened, then be examined by doctors, and then testify in court. *Page 22 
 {¶ 74} Appellant further argues that the prosecutor's comments about punishment, stating that a not guilty verdict would allow the defendant to walk away, was improper. We find appellant's argument to be misplaced. The prosecutor did not ask the jury to consider punishment. The prosecutor only asked the jury to consider the evidence presented. Appellant states that the prosecutor argued that an acquittal would allow appellant to escape punishment. The prosecutor asked the jury to consider the evidence presented. The closing argument was an attempt to make sure the jury deliberated over the evidence before coming to a decision. The prosecutor never asked the jury to consider punishment. This portion of the closing argument was proper.
 {¶ 75} Appellant further argues that comments directed toward uncontroverted evidence violated his Fifth Amendment right. The use of the word "uncontroverted" on the last part of the prosecutor's final argument is not a reference to the defendant's failure to testify. As is demonstrated throughout the prosecutor's final argument, the prosecutor referred to "uncontested" evidence, such as bruises and abrasions which were documented by medical personnel, and made a reference, either explicit or implied, on the defendant's failure to testify. The prosecutor used the word "uncontroverted" to refer to evidence that the defendant had not challenged.
 {¶ 76} "A reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is instructed *Page 23 
not to consider the accused's failure to testify for any purpose."State v. Ferguson (1983), 5 Ohio St.3d 160, paragraph one of the syllabus.
 {¶ 77} The prosecutor was not commenting on appellant's decision not to testify or mount a defense. The comment that facts were uncontroverted was followed by a discussion of what those facts were and how those facts proved the state's case beyond a reasonable doubt. The jury did not take this isolated comment and infer that the prosecutor was commenting on appellant's failure to testify. Moreover, the jury was instructed that they could not consider appellant's decision not to testify for any purpose whatsoever.
 {¶ 78} A prosecuting attorney has wide latitude to summarize the evidence and zealously advocate the state's position during the closing argument portion of his or her case. State v. Rahman (1986),23 Ohio St.3d 146, 154, 492 N.E.2d 401. The propriety of a particular remark by the prosecutor must be judged in light of the overall tenor and context of the entire closing argument. State v. Slagle (1992),65 Ohio St.3d 597, 607, 605 N.E.2d 916; State v. Moritz (1980), 63 Ohio St.2d 150,157, 407 N.E.2d 1268. Improper remarks during closing argument are grounds for reversal only when the remarks serve to deny the defendant a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239, 266,473 N.E.2d 768.
 {¶ 79} We find the prosecutor's comment to be proper. Nothing in the evidence demonstrates error on the part of the lower court.
 {¶ 80} Accordingly, we overrule appellant's eighth assignment of error.
Judgment affirmed.
 It is ordered that appellee recover of appellant costs herein taxed. *Page 24 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., CONCURS; MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY
[1] Tr. 282.
[2] Tr. 47.
[3] Tr. 915-916. *Page 1