OPINION
{¶ 1} Defendant-appellant Marc A. Ross appeals from his conviction and sentence for Aggravated Burglary. Ross contends that his conviction is against the weight of the evidence. He bases this contention in part upon a conventional argument that the jury should have found conflicting testimony in his favor, and in part because, *Page 2 
although the jury found for the State on the Aggravated Burglary count, which requires proof that the defendant did have a deadly weapon or dangerous ordnance, in this case, a handgun, on or about his person or under his control, the jury found for Ross on the firearm specification, which requires proof that a firearm was used, meaning "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."
 {¶ 2} We conclude that this is not the exceptional case where the jury lost its way in resolving conflicts in the testimony of the witnesses.
 {¶ 3} As far as the issue of the inconsistency between the conviction on the principal charge and the acquittal on the accompanying firearm specification, this identical issue was raised in State v. Ortega (March 14, 2008), Montgomery App. No. 22056, an appeal by Ross's co-defendant, involving the same facts. We held in that case that Ortega's conviction for Aggravated Burglary was not dependent on the attached firearm specification, so that the finding for the defendant on the firearm specification was not an impediment to a finding of guilt on the principal charge. We approve and follow State v. Ortega, supra. Accordingly, the judgment of the trial court is Affirmed. I {¶ 4} On July 3, 2006, Brian Mayo, 16; Tommy Zula, 14; and Matthew Donathan, 17, were spending the night at Mayo's home at 104 Calmont Farm Circle in Union, Ohio. At approximately 12:20 a.m., Zula answered a knock on the door. Bryan *Page 3 
Ortega was there, asking to speak to Mayo's older brother, Tony. According to Ortega, Ross had asked Ortega to accompany him to Tony Mayo's residence while Ross confronted Mayo about selling Xanax to Ross's girlfriend, Janelle Lopez.
 {¶ 5} When he was told that Tony was not at home, Ortega returned to the vehicle where Ross was waiting. Thirty minutes later, the three teens heard a second knock on the door. As Zula was answering the door, Ross and Ortega forced their way into the home, demanding to know where "the money" was and where Tony was. Ortega pulled out a gun and ordered that the three boys get onto the floor. Thereafter, Ross searched the bedrooms upstairs, allegedly taking $13.00 from Brian Mayo's dresser, while Ortega remained behind to watch the teens. When finished with the search, Ross and Ortega asked for the boys' cell phones. Brian Mayo gave his phone to the men, but Zula and Donathan replied that they did not have their phones with them. Ross and Ortega then turned to leave. As they were doing so, Ortega yelled, "Tell Tony, Fire was here. I want my money." Furthermore, the two men exclaimed that they would kill each of the boys if they called the police.
 {¶ 6} Minutes after Ross and Ortega had gone, the three boys called Mayo's friend, Travis Weller, and his mother. They asked if Ms. Weller would drive down the street outside the Mayo residence and see whether the two men were still in the area. Upon doing so and determining that Ross and Ortega were no longer in the vicinity, Travis and his mother went to Mayo's home. The three teens exited the house. Mayo and Zula got into the car with Travis and his mother, while Donathan left in his own vehicle. Subsequently, at Weller's home, Mayo called his mother, who then called the *Page 4 
police.
 {¶ 7} Meanwhile, at approximately 12:37 a.m., Janelle Lopez was stopped on West Martindale Road by a Union police officer on a suspicion that she was driving under the influence. At that time, Lopez and her passenger, Phillip Swabb, were driving a car registered to Ortega's friend, Aaron Fields. Earlier that evening, Ortega, Ross, Lopez and Swabb had met at Meijer in Englewood; Ortega was driving Fields's car at that time. At Meijer, Ortega and Ross paired up in Ross's vehicle in order to drive together to Tony Mayo's house. Lopez and Swabb stayed behind in Ortega's vehicle.
 {¶ 8} Lopez was given a field sobriety test, which she failed. She was consequently placed under arrest. Because Swabb did not have a valid driver's license, he could not drive Ortega's car. Therefore, Lopez was permitted to call Ortega to pick up the car and Swabb.
 {¶ 9} At approximately 1:25 a.m., Lieutenant Darrin Goudy called Ortega and asked him to come to the scene and take possession of his vehicle. Ortega responded that he would be there shortly, as he was nearby at 104 Calmont Farm Circle. Soon thereafter, Ortega and Ross arrived. They picked up Swabb and the vehicle and then drove away. Ortega left Ross and Swabb at Ross's vehicle before driving to Fields's home in Vandalia.
 {¶ 10} Subsequently, Ortega was contacted by Detective Steven Watern regarding an "incident that occurred" on July 3, 2006 at 104 Calmont Farm Circle. On that same day, Ortega spoke to Ross, who told him that Brian Mayo, Zula and Donathan had contacted the police. The two men were being accused of forcing their way into *Page 5 
Mayo's home and holding the teens at gunpoint while they searched the house. In fact, Ross had been identified as one of the offenders by both Mayo and Zula at the scene on the morning of the incident. Later that same day, Zula and Donathan identified Ortega as the second individual in a photo spread shown to them at the Union Police Department.
 {¶ 11} Ross was indicted on one count of Aggravated Burglary, in violation of R.C. 2911.11(A)(2); three counts of Aggravated Robbery, in violation of R.C. 2911.01(A)(1); three counts of Kidnapping, in violation of R.C. 2905.01(A)(2); and three counts of Abduction, in violation of R.C. 2905.02(A)(2). Each count included a three-year firearm specification, in violation of R.C. 2941.145.
 {¶ 12} The jury returned a verdict finding Ross guilty of Aggravated Burglary, but not guilty of all other counts, including the firearm specification attached to the Aggravated Burglary charge. Ross thereafter filed a motion for judgment of acquittal, or in the alternative, a motion for a new trial, on the basis that there was insufficient evidence to convict him of Aggravated Burglary, in view of the jury's finding in his favor on the firearm specification. This motion was overruled by the trial court.
 {¶ 13} Ross was sentenced to imprisonment for a term of three years. From his conviction and sentence, Ross appeals.
 II {¶ 14} Ross's sole assignment of error is as follows:
 {¶ 15} "THE JURY'S FINDING OF GUILTY ON COUNT ONE, AGGRAVATED *Page 6 
BURGLARY, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} Ross testified on his own behalf. Ortega also testified on his own behalf, and presented three other witnesses, as well. In this appeal, unlike in Ortega's appeal, both the weight-of-the-evidence and inconsistent verdict arguments are made in connection with the same assignment of error.
 {¶ 17} When an appellate court reviews the sufficiency of the evidence, the proper inquiry is whether any rational finder of fact, when viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Adrian, 168 Ohio App.3d 300, 2006-Ohio-4143,859 N.E.2d 1007, at ¶ 5, citing State v. Dennis (1997),79 Ohio St.3d 421, 430, 683 N.E.2d 1096. "A guilty verdict will not be disturbed on appeal unless `reasonable minds could not reach the conclusion reached by the trier-of-fact.'" Dennis, 79 Ohio St.3d at 430 (citations omitted).
 {¶ 18} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Adrian,2006-Ohio-4143, at ¶ 6, quoting State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. Essentially, a reviewing court "sits as a `thirteenth juror' and makes its own independent review of the evidence and inferences derived therefrom, and assesses and weighs the credibility of each *Page 7 
witness's testimony." Hagel, Ohio's Criminal Practice and Procedure (2006-07) 796, Section 41.207. However, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684, at *4. Only in exceptional circumstances should a judgment be reversed as being against the manifest weight of the evidence. State v. Parker, Montgomery App. No. 18926, 2002-Ohio-3920, at ¶ 70 (citation omitted).
 {¶ 19} Ross contends that the finding that a handgun was used during the offense is against the manifest weight of the evidence because only one of the victims, Matthew Donathan, provided details about the gun — its size and type, and no handgun was found by the police. The State points out that all three of the victim witnesses testified that Ross and Ortega forced their way into the home with a gun drawn.
 {¶ 20} We conclude that this is not the exceptional case in which a jury has lost its way in resolving conflicts in the testimony of the witnesses.
 {¶ 21} Ross's other argument, that the verdict convicting him of Aggravated *Page 8 
Burglary is inconsistent with the verdict acquitting him of the firearm specification, is identical to the argument Ortega made in his appeal. In that case, we held:
 {¶ 22} "It is well-established by courts in Ohio that `a finding of guilty on a principal charge but not guilty on a specification attached to the charge does not render the verdict inconsistent and thus invalidate the guilty verdict on the principal charge, at least where legally sufficient evidence supports the guilty verdict on the principal charge.' State v. Gardner, Montgomery App. No. 21027, 2006-Ohio-1130, at ¶ 32. See, also, State v. Allen, Hamilton App. No. C-060239,2006-Ohio-6822, at ¶ 32; State v. Boyd (1996), 110 Ohio App.3d 13, 17,673 N.E.2d 607; State v. Woodson (1985), 24 Ohio App.3d 143, 24 OBR 231,493 N.E.2d 1018. Moreover, `[inconsistency in a verdict does not arise out of inconsistent responses to different counts, but rather inconsistent responses to the same count.' Id. at ¶ 33, citing State v.Adams (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137; State v.Lovejoy (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112.
 {¶ 23} "Here, Ortega's conviction for aggravated burglary is not dependent on the attached firearm specification. `Specifications are considered after and in addition to the finding of guilt on the principal charge.' Gardner, 2006-Ohio-1130, at ¶ 33. The jury in this matter was instructed on the firearm specification, in part, as follows:
 {¶ 24} "`Firearm means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. * * * When deciding whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, you may rely on *Page 9 
circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.'
 {¶ 25} "This Court can only speculate as to how the jury reached the decision on the specification, whether it simply found that the State failed to prove beyond a reasonable doubt that the gun at issue was operable. Nevertheless, that is only conjecture; it has no effect on the jury's finding Ortega guilty of the principal charge. SeeAllen, 2006-Ohio-6822, at ¶ 32. Accordingly, Appellant's first assignment of error is overruled."
 {¶ 26} We see no reason to depart from our holding in State v.Ortega, supra, which we approve and follow.
 {¶ 27} Ross's sole assignment of error is overruled.
 III {¶ 28} Ross's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 GRADY and DONOVAN, JJ., concur. *Page 1