OPINION
{¶ 1} Gary Molen appeals from his conviction and sentence on two counts of rape of a child under age thirteen in violation of R.C. 2907.02(A)(1)(b).
 {¶ 2} Molen advances eight assignments of error on appeal. First, he contends the trial court committed plain error by conducting a deficient pre-trial competence *Page 2 
examination of the victim. Second, he claims his rape convictions are against the manifest weight of the evidence because the victim's testimony was fraught with inconsistencies and fantastic allegations. Third, he asserts that the trial court committed plain error by allowing the State to introduce unfairly prejudicial "other-acts" evidence. Fourth, he argues that the trial court erred in failing to ensure that multiple identical charges against him were differentiated for trial. Fifth, he contends his conviction for anal rape is against the manifest weight of the evidence because the State failed to prove penetration of the anal cavity. Sixth, he claims there is legally insufficient evidence to support his conviction for rape based on fellatio because the State failed to prove penetration, stimulation, or sexual satisfaction. Seventh, he asserts that his trial counsel provided constitutionally ineffective assistance by failing to object to the victim's competence, the introduction of prejudicial other-acts evidence, and the imposition of maximum prison terms. Eighth, he argues that the trial court erred in imposing maximum sentences on the rape convictions.
 {¶ 3} The record reflects that Molen was indicted in April 2006 on three counts of gross sexual imposition, one count of disseminating material harmful to juveniles, and four counts of rape. The charges stemmed from allegations that Molen had sexually abused Z.D. and G.R., the children of his former girlfriend, between November 2001 and May 2002. The allegations were made by Z.D., who was nine years old when he disclosed them. According to Z.D., the abuse occurred when he was five years old and G.R. was one and a half years old.
 {¶ 4} The trial court held a competence hearing on July 5, 2006 and found Z.D. competent to testify without objection from defense counsel. The matter proceeded to *Page 3 
trial in September 2006. At trial, Z.D. was the only witness to the alleged abuse. On direct examination, he testified that on one occasion Molen pushed him down on a bedroom floor and pulled his pants down. Molen then got on the floor naked and "shoved a little something up [Z.D.'s] butt[.]" (Tr. Transcript at 250-251). Z.D. "had no idea what it was," but it felt "bad" and "kind of" hurt. (Id. at 251). According to Z.D., the "something" felt like it was inside his "butt" because "it was tickling [his] stomach." (Id. at 257). Z.D. further testified that Molen was laughing and making a "tickly kind of noise." (Id. at 252). Z.D. added that Molen's body was touching his "butt" and that Molen was "moving it a little bit." (Id. at 254, 256). After about thirty seconds, Molen got off of Z.D. and went to bed. (Id. at 257-258). Z.D. testified that he subsequently looked in a mirror and saw "blood in [his] butt" when using the bathroom. He also testified about seeing blood in his underwear. (Id. at 270, 325).
 {¶ 5} Z.D. then described a second incident in the bedroom. On this occasion, Molen allegedly pulled his own pants down, pushed Z.D. to the ground, got on top of Z.D., and "put his weanie on [Z.D.'s] lips." (Id. at 261). Z.D. testified that the "weanie" remained outside his mouth, and only the tip of it touched his lips. (Id. at 260). Z.D. did not see or feel anything wet, and Molen's "weanie" looked "soft." (Id. at 262, 300). Z.D. "tried to stop it but [he] couldn't get out of it, but then [Molen] stopped." (Id. at 261).
 {¶ 6} Although Z.D. also testified about other incidents, the jury found Molen not guilty on four of the counts against him. In addition, two gross sexual imposition counts were dismissed at the close of the State's case. The jury convicted Molen on two counts of rape for the incidents described above. The trial court imposed concurrent ten-year sentences. This timely appeal followed. *Page 4 
 {¶ 7} In his first assignment of error, Molen contends the trial court committed plain error by conducting a deficient pre-trial competence examination of Z.D. In particular, Molen claims the trial court failed to question Z.D. about his ability to recall events that took place around the time of his abuse. Molen asserts that questioning Z.D. about his ability to recall relatively recent events was insufficient. This is so, Molen reasons, because Z.D. was not being evaluated so he could testify about events from his recent past. Instead, nine-year-old Z.D. was being evaluated so he could testify about abuse that allegedly occurred in 2002 when he was five years old. Therefore, Molen argues that the relevant inquiry was whether Z.D. accurately could perceive and recall events from that time period.
 {¶ 8} Molen's assignment of error implicates Evid. R. 601, which provides: "Every person is competent to be a witness except: (A) * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 9} "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful."State v. Frazier (1991), 61 Ohio St.3d 247, 251. "The determination of whether a child under ten is competent to testify is within the sound discretion of the trial court." Baird v. Gillispie (Jan. 21, 2000), Miami App. No. 99-CA-12. In the present case, defense counsel did not object to the trial *Page 5 
court's competence determination. Therefore, Molen recognizes that he must demonstrate plain error in the trial court's finding that Z.D. was competent to testify. An error qualifies as plain error only if the error is obvious and but for the error the outcome of the proceeding clearly would have been otherwise. State v. Alexander, Montgomery App. No. 22278, 2008-Ohio-4131, ¶ 27.
 {¶ 10} Having reviewed the record, we find no plain error in the trial court's competence determination. A hearing transcript reflects that the trial court questioned Z.D. primarily about his ability to recall things from the recent past. The trial court asked only two questions even approaching the time frame of the alleged abuse. Those questions concerned where Z.D. went to kindergarten and the name of his kindergarten teacher. Z.D. answered both of those questions without difficulty. At the time of the alleged abuse, however, Z.D. was in preschool, not kindergarten. Trial testimony from Z.D.'s mother pinpointed the alleged abuse to have occurred between January and March of 2002. Z.D.'s mother testified that she, Molen, and her children moved into the house where the abuse occurred in January 2002. (Trial transcript at 134). She subsequently ended her relationship with Molen in March 2002. (Id. at 154). During the January-to-March time period, Z.D. attended preschool. (Id. at 140-141). He did not begin kindergarten until August or September 2002. (Id. at 159). Assuming a traditional school year, Z.D. did not finish kindergarten until around June 2003. Therefore, Z.D. began kindergarten at least several months after the abuse had ended, and he completed kindergarten well over a year after the abuse had stopped.
 {¶ 11} In our view, Z.D.'s ability to state where he attended kindergarten and the name of his teacher did not adequately establish his ability to recall accurately events *Page 6 
from the time period of the alleged abuse. As set forth above, the relevant inquiry is whether a child can receive accurate impressions of fact or observe the "acts about which he or she will testify" and recall "those impressions or observations." Frazier, 61 Ohio St.3d at 251; see also State v. Cobb (1991), 81 Ohio App.3d 179, 183 ("In most cases the child will be a competent witness if the child has the intellectual capacity to accurately and truthfully recount events occurring during the same time period as the events about which he is to testify at trial."); State v. Jett (March 31, 1998), Portage App. No. 97-P-0023 ("Under Frazier, the first criteria is the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify. That requires the court to delve into the child's ability to recount the events from the time frame of the incident at issue. This is more than the child's ability to testify regarding present events such as what grade she is in at school and who her current teacher is.").
 {¶ 12} We previously have recognized that a competence hearing need not involve questioning a child about the specific sexual abuse allegations at issue in a case. State v. Brooks, Montgomery App. No. 18502, 2001-Ohio-1650. We do believe, however, that a trial court must establish a child's ability accurately to recall things from the time period of the abuse, particularly where, as here, the abuse occurred years earlier.[1] Although the trial court briefly asked Z.D. about kindergarten, we believe the *Page 7 
questioning was not sufficient to establish his competence to testify about the events at issue in this case.
 {¶ 13} Despite the foregoing conclusion, we find no plain error because Z.D.'s subsequent trial testimony demonstrated his competence as a witness. At least six appellate districts have recognized that a deficiency in questioning during a competence hearing may be cured if a child's subsequent trial testimony establishes competence. State v.Middlesworth, Wayne App. No. 05CA0016, 2006-Ohio-12, ¶ 8, citingState v. Wells, Summit App. No. 21149, 2003-Ohio-3162, and State v.Lewis (1982), 4 Ohio App.3d 275; see also In re Clark, Licking App. Nos. 2004CA00043, 2004CA00044, 2004-Ohio-7260, ¶ 32; State v. Wilson (Feb. 18, 2000), Adams App. No. 99CA672; State v. McShan (Aug. 28, 1997), Cuyahoga App. No. 71139; State v. Allard (April 12, 1995), Knox App. No. 93-7, affd, 75 Ohio St.3d 482, 1996-Ohio-208; Wooten v. Paxson (March 28, 1995), Paulding App. No. 11-94-8, n. 2; State v. White (Nov. 10, 1987), Hardin App. No. 6-86-8; State v. Morgan (1986),31 Ohio App.3d 152, 156-157. We have not found, and Molen has not cited, any contrary authority.
 {¶ 14} We find it particularly appropriate to examine Z.D.'s trial testimony to evaluate his competence in the present case, which involves plain-error review. If Z.D.'s trial testimony revealed that he was a competent witness under Frazier, then the trial court's erroneous failure to ask more questions during the competence hearing did not prejudice Molen and the result of the proceedings would not have been different but for the error. The record before us supports such a conclusion. Z.D. testified about his recollection of living in a "red" house where the alleged abuse occurred. He also recalled living in another residence before that but clarified that the "bad stuff" happened in the *Page 8 
red house. Z.D. proceeded to describe the interior of the red house, including how many bedrooms it had and where everyone slept. In the course of his testimony, Z.D. proceeded to describe incidents of abuse that allegedly occurred on a bus and in different rooms of the red house. He also testified about his recollection of Molen disciplining him by putting liquid soap in his mouth and forcing him to stand with urine-soaked underwear on his head. In her own testimony, Z.D.'s mother confirmed that these acts of discipline had occurred. Although Molen contends on appeal that Z.D.'s testimony contained inconsistencies and wild allegations, we are convinced that if Z.D. had provided the same testimony during the competence hearing that he gave at trial, he properly would have been found competent under Evid. R. 601.[2]
Therefore, Z.D.'s trial testimony cured the deficiency in the trial court's questioning during the competence hearing. Because Molen was not prejudiced by the trial court's failure to ask questions about the relevant time frame during the competence hearing, we find no plain error. The first assignment of error is overruled.
 {¶ 15} In his second assignment of error, Molen claims his rape convictions are against the manifest weight of the evidence because Z.D.'s testimony was fraught with inconsistencies and fantastic allegations. *Page 9 
 {¶ 16} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Adrian,168 Ohio App.3d 300, 2006-Ohio-4143, ¶ 6, quoting State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52. Essentially, this court sits as a "thirteenth juror," making its own assessment of the evidence and the credibility of the witnesses' testimony. State v. Bell, 176 Ohio App.3d 378, 394,2008-Ohio-2578. Nevertheless, "`[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.'" State v. Ross, Montgomery App. No. 22096, 2008-Ohio-1760, ¶ 18, quoting State v.Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Only in exceptional circumstances should a judgment be reversed as being against the manifest weight of the evidence." Id., citing State v. Parker, Montgomery App. No. 18926, 2002-Ohio-3920, ¶ 70.
 {¶ 17} In support of his manifest-weight argument, Molen recites a number of inconsistencies between Z.D.'s trial testimony and earlier statements he made when *Page 10 
interviewed by social worker Pat Serie and Dayton police detective Jo Quinn. In particular, Z.D. denied certain acts of abuse in his pre-trial interview but testified about them at trial. Most notably for purposes of the present appeal, Z.D. shook his head "no" during the interview when asked whether Molen ever had "put anything in [his] butt." With regard to certain other events, he recalled them differently in his pretrial interview and at trial. He also failed to remember details at trial that he had spoken about in his pre-trial interview and vice versa. Finally, in both his pre-trial interview and at trial, Z.D. described a seemingly incredible series of events involving him fending off and fleeing from Molen, who was chasing him with a knife. Although Z.D. described the incident somewhat differently in his pre-trial interview and at trial, either version of events appears highly improbable given Z.D.'s age at the time.
 {¶ 18} After reviewing the transcript of Z.D.'s pre-trial interview and comparing it to his trial testimony, we do not dispute the presence of notable inconsistencies. On the other hand, many of the inconsistencies involved the six counts on which Molen was not convicted, either because the State dismissed them or because the jury returned not-guilty verdicts. This is not to say that Z.D.'s inconsistencies and fantastic allegations were irrelevant to the two rape counts on which Molen was convicted. To the extent that Z.D. made inconsistent statements, he negatively affected his credibility in general, potentially affecting the weight to be given to all of his testimony. Moreover, as noted above, at least one of Z.D.'s inconsistencies concerned whether Molen "put anything in [his] butt." This inconsistency related directly to an anal rape charge on which Molen was convicted. By virtue of its multiple not-guilty verdicts, however, we note that the jury does appear to have taken Z.D.'s inconsistencies and fantastic allegations into account *Page 11 
when assessing his credibility.
 {¶ 19} Bearing in mind that the decision regarding the extent to which to credit the testimony of a witness "is within the peculiar competence of the factfinder," Ross, supra, we do not believe Molen's rape convictions are against the manifest weight of the evidence. In reaching this conclusion, we make several observations. First, it was within the province of the jury to find credible Z.D.'s trial testimony that supported the rape charges based on allegations of anal sex and fellatio. At trial, Z.D. described separate incidents where Molen allegedly engaged in the conduct underlying these charges. There is nothing incredible, fantastic, or inherently unbelievable about these portions of Z.D.'s trial testimony. Second, the State presented testimony from pediatric psychologist Linda Miceli, who explained that young boys who have been sexually abused sometimes tell fantastic tales about resisting their abuser in order to help themselves cope with the abuse and to feel more empowered. (Trial transcript at 558-560). This testimony gave the jury a reasonable basis for believing Z.D.'s rape allegations despite his seemingly tall tales of resisting Molen's knife attack. Third, Miceli also explained that an abused child initially might deny acts of oral or anal sex or fail to mention them due to embarrassment and uncertainty about how adults will respond. (Id. at 563, 565). This explanation gave the jury a reasonable basis for discounting some of the more meaningful inconsistencies in Z.D.'s pre-trial interview and trial testimony. Fourth, Z.D.'s mother and his biological father, who had visitation with Z.D., attested to negative behavioral changes they noticed in their son following the alleged incidents of abuse. Fifth, Miceli expressed her expert opinion that Z.D. had been sexually abused by someone and gave reasons for that belief based on her interviews with him. (Id. at 565). *Page 12 
After reviewing the record, weighing the evidence and all reasonable inferences, and considering witness credibility, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice when it convicted Molen on two counts of rape. Despite the inconsistencies and other deficiencies in Z.D.'s testimony, the evidence before us does not weigh heavily against Molen's convictions. Accordingly, his second assignment of error is overruled.
 {¶ 20} In his third assignment of error, Molen asserts that the trial court committed plain error by allowing the State to introduce unfairly prejudicial "other-acts" evidence. This assignment of error concerns the prosecutor's solicitation of testimony from Z.D. and his mother regarding the incident when Molen punished Z.D. by putting liquid soap in the child's mouth and the incident when Molen had Z.D. stand with urine-soaked underwear on his head. Molen contends this testimony was inadmissible under Evid. R. 404(B) and Evid. R. 403(A). Although defense counsel did not object, Molen claims its admission constituted plain error.
 {¶ 21} Upon review, we find this assignment of error to be unpersuasive. Under Evid. R. 404(B), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may be admissible for other purposes, some of which are set forth in Evid. R. 404(B). That list is non-exclusive, however, and other-acts evidence generally may be admitted if relevant to show something other than the accused's criminal propensity. State v. Harris, Montgomery App. No. 19311, 2003-Ohio-1046, ¶ 8.
 {¶ 22} In the present case, the State argues that the testimony about liquid soap and underwear was not introduced to prove Molen's bad character or propensity to *Page 13 
commit crime. Instead, the State asserts that the testimony was introduced to show Molen's intimidation of and control over Z.D. and to help explain why the child may have feared Molen and delayed disclosing the abuse. The record supports the State's argument that the testimony was introduced for these permissible purposes. We find no error, much less plain error, in the trial court's admission of the evidence.
 {¶ 23} Finally, under Evid. R. 403(A), relevant evidence must be excluded "it its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury." Molen argues that the testimony about liquid soap and underwear was unfairly prejudicial because it needlessly and excessively appealed to the jurors' emotions. Having reviewed the testimony about liquid soap and underwear, we do not find that it was subject to exclusion under Evid. R. 403(A). Even if defense counsel had objected, the trial court would have been justified, in the exercise of its broad discretion, in finding the testimony to be more probative than unfairly prejudicial. Accordingly, we find no error, plain or otherwise, in the State's use of the testimony. The third assignment of error is overruled.
 {¶ 24} In his fourth assignment of error, Molen argues that the trial court erred in failing to ensure that multiple identical charges against him were differentiated for trial. Molen points out that his indictment contained four identical counts of rape and three identical counts of gross sexual imposition, using the same six-month time frame and tracking the language of the applicable statute. Molen contends there was a lack of differentiation, either before or during trial, as to which events testified to by Z.D. pertained to which charge. He asserts that the lack of differentiation resulted in jury confusion regarding the specific conduct underlying counts five and six, both of which *Page 14 
alleged the rape of Z.D. Molen further asserts that the lack of differentiation should preclude any retrial for anal rape given that he was acquitted on two rape counts.
 {¶ 25} Upon review, we find Molen's argument to be without merit. It is true that his indictment charged four identical counts of rape and three identical counts of gross sexual imposition. Two of the gross sexual imposition charges were dismissed by the State following the prosecution's case. The State dismissed one of the charges after recognizing that Z.D. only testified about two incidents of gross sexual imposition. (Trial transcript at 695-696). The trial court designated the remaining two charges as counts one and two. It identified count one as involving an incident when Molen allegedly touched Z.D. while on a bus. It identified count two as involving an incident when Molen allegedly forced Z.D. to touch his younger brother, G.R. Shortly thereafter, the trial court dismissed count two. (Id. at 715-716). When instructing the jury prior to deliberations, the trial court explained that count one referred "to the incident on the bus." (Id. at 751). Similarly, the prosecutor explained during closing argument that count one involved an act of gross sexual imposition that occurred when Molen touched Z.D.'s penis on a bus. (Id. at 762).
 {¶ 26} As for the four identical rape charges set forth in counts five, six, seven, and eight, the trial court and counsel discussed each count and the factual basis for it at the close of the prosecution's case. (Id. at 678-680). The trial court summarized Z.D.'s testimony about one incident of anal rape and designated it count five. The trial court then referred to Z.D.'s testimony about a second incident of anal rape and designated it count six. The trial court recalled Z.D.'s testimony about an act of fellatio involving Molen and Z.D. and designated that charge count seven. Finally, an act of fellatio involving *Page 15 
Molen and G.R. was designated as count eight. (Id.). When instructing the jury prior to deliberations, the trial court advised that counts five and six related to the anal penetration of Z.D., that count seven involved an act of fellatio on Z.D., and that count eight involved an act of fellatio on G.R. (Id. at 756). During closing arguments, the prosecutor discussed with the jury the specific evidence supporting each of these counts. (Id. at 767-772).
 {¶ 27} In light of the foregoing facts, we disagree with Molen's contention that a lack of differentiation between charges prejudiced him. This court has recognized that when an indictment contains multiple identical charges, the State may differentiate them by providing a factual basis for each either before or during trial. State v.Bell, 176 Ohio St.3d 378, 393, 2008-Ohio-2578. In the present case, the trial court and the prosecutor adequately differentiated the various charges for the jury. Id. Molen's reliance on State v. Shaw, Montgomery App. No. 21880, 2008-Ohio-1317, fails to persuade us otherwise. InShaw, we noted the absence of any differentiation before or during trial as to which particular facts applied to which of the identical charges.Shaw is distinguishable because the trial court and the prosecutor in Molen's case adequately identified for the jury which facts applied to which charges. Accordingly, the fourth assignment of error is overruled.
 {¶ 28} In his fifth assignment of error, Molen contends his conviction for anal rape is against the manifest weight of the evidence because the State failed to prove penetration of Z.D.'s anal cavity.
 {¶ 29} As set forth above, when a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, *Page 16 
weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52.
 {¶ 30} Molen correctly points out that an anal rape conviction requires proof that the defendant penetrated the victim's anal cavity. Penetration of the buttocks is not enough. State v. Wells,91 Ohio St.3d 32, 2001-Ohio-3. In our view, however, the manifest weight of the evidence supports the jury's finding that Molen did penetrate Z.D.'s anal cavity with his penis.
 {¶ 31} Z.D. testified that Molen pushed him down on the floor and pulled his pants down. Molen then got on the floor naked and "shoved a little something up [Z.D.'s] butt[.]" Although Z.D. "had no idea what it was," it felt "bad" and "kind of" hurt. Z.D. stated that the "something" was inside his "butt," and it was "tickling [his] stomach." He added that Molen's body was touching his "butt" and that Molen was "moving it a little bit."
 {¶ 32} On appeal, Molen takes issue with Z.D.'s additional testimony that he looked in a mirror and saw "blood in [his] butt" when using the bathroom. Molen stresses testimony from Z.D.'s mother that she never saw any blood and testimony from Z.D. that he never told anyone about the bleeding. The jury presumably considered these points when assessing Z.D.'s credibility and reaching its verdict. The fact that Z.D.'s mother never saw any blood and that Z.D. never told anyone about the bleeding does not necessarily mean that no bleeding occurred. *Page 17 
 {¶ 33} Although Molen has not raised the issue, we do note sua sponte that Z.D.'s testimony about bleeding was somewhat unclear as towhen the bleeding occurred. At trial, Z.D. described two alleged acts of anal rape. Z.D. provided the most detailed testimony about the incident described above. After he discussed that incident, which provided the basis for the anal rape conviction on count five, Z.D. mentioned a second incident when Molen "put something in [his] butt." (Trial transcript at 268-269). The prosecutor asked Z.D. how his butt felt after "these things" happened. (Id. at 270). By referring to "these things," the prosecutor appears to have been addressing both alleged incidents of anal rape. Z.D. responded that it felt "bad" and "hurt." (Id.). The prosecutor then asked Z.D. what would happen when he would go to the bathroom. Z. D. responded that he looked in a mirror and saw blood in his butt. (Id.). It is unclear to us whether this bleeding occurred only following the first incident, for which Molen was convicted on count five, whether it occurred only following the second incident, for which he was acquitted on count six, or whether it occurred following both incidents. Although the prosecutor's questioning appeared to address both incidents, defense counsel on cross examination discussed with Z.D. the "one time [he was] bleeding." (Id. at 324).
 {¶ 34} While evidence of anal bleeding certainly strengthens the State's claim that penetration occurred, Molen's conviction for anal rape on count five is not against the manifest weight of the evidence even if the evidence of bleeding is discounted. As set forth above, Z.D. testified that Molen shoved something "up his butt," that it felt "bad" and "kind of" hurt. Z.D. also testified that the "something" was inside his butt and was "tickling [his] stomach." The jury reasonably could have determined that only penetration of the anus, as opposed to mere penetration of Z.D.'s buttocks, would hurt *Page 18 
and feel as if it were tickling Z.D.'s stomach. Thus, after reviewing the record, weighing the evidence and all reasonable inferences, and considering witness credibility, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice. The evidence supports a finding that Molen penetrated Z.D.'s anus with his penis. The fifth assignment of error is overruled.
 {¶ 35} In his sixth assignment of error, Molen claims there is legally insufficient evidence to support his conviction for rape based on fellatio because the State failed to prove penetration, stimulation, or sexual satisfaction.
 {¶ 36} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v.Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 37} Molen was convicted of rape under R.C. 2907.02(A)(1)(b), which provides that no person shall engage in sexual conduct with another who is not the spouse of the offender when the other person is less than thirteen years of age. Molen contends the State presented insufficient evidence to prove that he engaged in "sexual conduct" when he allegedly placed his penis on Z.D.'s lips. Under R.C. 2907.01(A), "sexual conduct" *Page 19 
includes "fellatio," which is not defined in the statute. Molen argues that fellatio requires proof of at least slight penetration of the mouth. But even if fellatio does not require proof of penetration, he argues, alternatively, that it requires proof of stimulation or sexual satisfaction, neither of which was established at trial.
 {¶ 38} Upon review, we find legally sufficient evidence to support Molen's rape conviction based on the act of fellatio. We agree with Molen that the State failed to prove penetration of the mouth. Z.D. testified that Molen only placed the tip of his "weanie" on Z.D.'s lips. Proof of penetration, however, is neither sufficient nor necessary to support a rape conviction based on fellatio. In re M.D. (1988),38 Ohio St.3d 149, 152 ("[W]e note that mere penetration of the oral cavity is not sufficient to complete the offense [of fellatio], unlike vaginal or anal intercourse."); State v. Brewer, Greene App. No. 03CA0074,2004-Ohio-3572, ¶ 33 ("Penetration of a victim's bodily orifice is not required for `fellatio,' which involves oral stimulation of the penis."). The pertinent issue in a fellatio prosecution is whether the defendant obtained oral stimulation or sexual satisfaction through contact between the mouth and the penis. In re M.D.,38 Ohio St.3d at 152; see also State v. Rhodes (Oct. 6, 1989), Montgomery App. No. 11584 ("We conclude that the mere contact between a defendant's mouth and another's penis, without any evidence of a purpose of obtaining sexual gratification or stimulation, does not constitute fellatio as we understand the term."); State v. Barrett, Defiance App. No. 4-06-04,2006-Ohio-4546, ¶ 13 (recognizing that "either sexual gratification or oral stimulation must be proven" to sustain a fellatio conviction).
 {¶ 39} Viewing the evidence in the light most favorable to the prosecution, we believe the jury reasonably could have found that Molen placed his penis on Z.D.'s lips *Page 20 
for the purpose of obtaining sexual gratification. Z.D. testified that Molen pulled his own pants down, pushed Z.D. to the ground, got on top of Z.D., and "put his weanie on [Z.D.'s] lips." It was not irrational for the jury to have inferred from these facts that Molen acted with a purpose of obtaining sexual gratification. Therefore, the State presented legally sufficient evidence to support Molen's rape conviction based on the act of fellatio. The sixth assignment of error is overruled.
 {¶ 40} In his seventh assignment of error, Molen asserts that his trial counsel provided constitutionally ineffective assistance by failing to object to Z.D.'s competence to testify, the introduction of prejudicial other-acts evidence, and the imposition of maximum prison terms.
 {¶ 41} Ineffective assistance of counsel claims are evaluated under the two-prong analysis set forth in Strickland v. Washington (1984), 466 U.S. 668. To reverse a conviction based on ineffective assistance of counsel, an appellant first must demonstrate that his counsel's conduct was deficient in that it fell below an objective standard of reasonableness. When considering this issue, trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. Id. at 690. The second prong ofStrickland requires a showing that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the result of the proceeding would have been different. Id. at 687.
 {¶ 42} In our analysis of Molen's first assignment of error, we found that the trial court should have inquired about Z.D.'s ability to recall events that occurred during the time period of his abuse. We believe defense counsel provided deficient representation by not objecting to the trial court's failure to do so. Nevertheless, we find no reasonable *Page 21 
probability that, but for counsel's failure to object, the result would have been different. As we explained in our analysis of the first assignment of error, Z.D.'s trial testimony itself persuades us that he was sufficiently capable of recalling events that occurred during the period of his abuse. If defense counsel had objected during the competence hearing, Z.D. could have provided the same testimony at that time and demonstrated his competence. Therefore, defense counsel's failure to object to the trial court's questioning during the competence hearing did not result in any prejudice under Strickland.
 {¶ 43} As for defense counsel's failure to object to the introduction of other-acts evidence, we found in our analysis of Molen's third assignment of error that the evidence was not objectionable and was properly admitted. Therefore, defense counsel did not provide deficient representation by failing to object. We reach the same conclusion with regard to the trial court's imposition of concurrent, maximum prison terms. As explained below in our disposition of Molen's eighth assignment of error, the trial court did not err in its sentencing. Therefore, defense counsel did not provide deficient representation by failing to object to the sentences Molen received. His seventh assignment of error is overruled.
 {¶ 44} In his eighth assignment of error, Molen contends the trial court erred in imposing maximum sentences on his rape convictions. His specific argument is that application of the sentencing remedy provided in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, to crimes committed prior to the date of that decision violates the Ex Post Facto and Due Process Clauses of the federal Constitution. We find no merit in Molen's argument, which we have rejected many times. See, e.g., State v.Smith, *Page 22 
Montgomery App. No. 21833, 2007-Ohio-2976, ¶ 4 (citing cases). The eighth assignment of error is overruled.
 {¶ 45} Having overruled each of Molen's assignments of error, we hereby affirm the judgment of the Montgomery County Common Pleas Court.
WOLFF, P.J., and FAIN, J., concur.
[1] In opposition to this conclusion, the State cites State v.McNeill, 83 Ohio St.3d 438, 1998-Ohio-293. The State asserts that the questioning of the young witnesses in that case was "very similar" to the trial court's questioning of Z.D. As Molen properly notes, however,McNeill is distinguishable because the children in that case testified less than a year after the shooting they had witnessed. The children were not asked to recall events from the distant past, but, unlike Z.D., they also were not going to be testifying about any such events. As a result, we find the State's reliance on McNeill to be unpersuasive.
[2] To the extent that Z.D.'s testimony contained some inconsistencies and fantastic allegations, such deficiencies certainly might have affected the weight and credibility of his testimony. These are issues we will discuss more fully, infra, in our analysis of Molen's second assignment of error. Despite its deficiencies, we conclude that Z.D.'s trial testimony adequately demonstrated his general ability to perceive and relate accurate impressions of events during the time frame of his alleged abuse, which is what Frazier and Evid. R. 601 required. Cf.State v. Uhler (1992), 80 Ohio App.3d 113, 118 ("There is nothing in the record which necessitates a conclusion that the victim was absolutely incapable of perceiving and truthfully relating impressions of the facts. Any inconsistencies in her accounts went to the weight and credibility to be afforded by the jurors."). *Page 1